Richard Wayne JONES, Appellant,

v.

STATE of Texas, Appellee.

No. 69894.

Court of Criminal Appeals of Texas.

April 29, 1992.

Rehearing Denied Nov. 4, 1992.

Allan K. Butcher, Jack V. Strickland, Fort Worth, for appellant.

Tim Curry, Dist. Atty. and C. Chris Marshall, Christian Harrison, and Robert Gill, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

MALONEY, Judge.

Richard Wayne Jones, appellant, was convicted by a jury of capital murder, specifically murder committed in the course of kidnapping and robbery. V.T.C.A. Penal

Code, § 19.03(a)(2). The jury answered the special issues in the affirmative and punishment was assessed at death. Article 37.071, V.A.C.C.P. He has appealed alleging twenty-four points of error, but does not challenge the sufficiency of the evidence. We will affirm his conviction.

In his first point of error appellant alleges that the trial court committed reversible error by refusing to admit the grand jury testimony of Yelena Comalander, a witness who, when called by appellant at trial, asserted her Fifth Amendment privilege against self incrimination and refused to testify. Appellant requested that Comalander be granted immunity and ordered to testify. The State objected and the trial court denied his request. Appellant then asked to have Comalander's grand jury testimony admitted into evidence. The State objected claiming that the grand jury testimony was hearsay. Appellant then asserted that, although the testimony was hearsay, it fell within an exception to the hearsay rule because Comalander was unavailable to him as a witness and her testimony was given at a former grand jury hearing. Tex.R.Crim.Evid. 804(b)(1). Further, he argued that excluding the evidence under the hearsay rule would deny him due process and equal protection as well as his Fifth, Sixth, Eighth, and Fourteenth Amendments rights. The trial court excluded the testimony. On appeal, appellant urges that the grand jury testimony should have been admitted because it falls into the former testimony exception to the hearsay rule and because due process of law demands its admissibility.

The issue of whether grand jury testimony may be admitted when proffered by the defendant under rule 804(b)(1) is a novel one before this Court. However, it has been addressed by several federal circuit courts of appeal. Because the Texas hearsay exception for former testimony is almost identical to its federal counterpart[1], the federal courts' interpretation of the applicability of the rule to grand jury testimony is instructive to our resolution of this issue.

The former testimony exception to the Texas Rules of Criminal Evidence provides in pertinent part:

(b) Hearsay exceptions: The following are not excluded if the declarant is unavailable as a witness:

(1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Tex.R.Crim.Evid. 804(b)(1).

A witness is rendered unavailable when she invokes her Fifth Amendment privilege not to testify. Tex.R.Crim.Evid. 804(a)(1) (A witness is unavailable when she "is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of [her] statement."); *see also Granger v. State*, 653 S.W.2d 868, 873 (Tex.App.–Corpus Christi 1983), *aff'd*, 683 S.W.2d 387 (Tex.Cr.App. 1984), *cert. denied*, 472 U.S. 1012, 105 S.Ct. 2713, 86 L.Ed.2d 728 (1985). Since Comalander asserted her privilege against self-incrimination, she was unavailable as a witness to appellant.[2]

The State argues that grand jury proceedings are not "another hearing of the same or a different proceeding." Grand jury proceedings are hearings on the allegation brought against a criminal defendant and thus, satisfy the requirement that

---

**1.** The only difference between the rules is that the federal rule applies to both civil and criminal trials. The federal rule provides:

(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Fed.R.Evid. 804(b)(1).

**2.** As will be discussed later, Comalander was available to the State since the State has the authority to grant her immunity.

the testimony be given at "another hearing of the same or a different proceeding." Tex.R.Crim.Evid. 804(b)(1). *See also United States v. Salerno,* 937 F.2d 797, 805 (2d Cir.1991); *United States v. Miller,* 904 F.2d 65, 67–68 (D.C.Cir.1990).

The final requirement for admission under 804(b)(1) is that the "party against whom the testimony is ... offered [must have] had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." *Id.* The purpose of this provision of the rule is to protect the party against whom the hearsay evidence is offered from the ill-effects of not being able to examine the witness who made the statement or gave the testimony. *Salerno,* 937 F.2d at 806. If the party against whom the hearsay evidence is offered previously had an opportunity and similar motive to examine the witness, then the ill-effects are ameliorated.

The State contends that it does not have the same goals in developing testimony at a grand jury hearing as it does at trial because grand jury proceedings are confidential hearings to investigate the case and determine whether probable cause exists to indict the defendant, thus a prosecutor must be a neutral participant responsible for bringing all the facts before the grand jury. *See* art. 2.01, V.A.C.C.P.

■ Several federal circuit courts of appeal have held that the government has "the same motive and opportunity to question [the witness] when it brought him before the grand jury as it does at trial." *Miller,* 904 F.2d at 68; *see also United States v. Lester,* 749 F.2d 1288, 1301 (9th Cir.1984); *United States v. Young Bros., Inc.* 728 F.2d 682, 691 (5th Cir.), *cert. denied,* 469 U.S. 881, 105 S.Ct. 246, 83 L.Ed.2d 184 (1984)[3]; *United States v. Klauber,* 611 F.2d 512, 516–17 (4th Cir.

1979), *cert. denied,* 446 U.S. 908, 100 S.Ct. 1835, 64 L.Ed.2d 261 (1980).

Moreover, when, as in this case, the grand jury testimony of a witness is proffered against the government and the witness is unavailable to the defendant because of an assertion of a Fifth Amendment privilege, federal courts of appeal have recognized that the government has the ability to examine the witness by granting the witness immunity. *See generally United States v. Marchini,* 797 F.2d 759 (9th Cir.1986), *cert. denied,* 479 U.S. 1085, 107 S.Ct. 1288, 94 L.Ed.2d 145 (1987).[4] This argument has been accepted by other federal courts:

> The fact that [grand jury testimony] would not ... be subject to cross-examination is of little weight. The defendant, who would be seeking to introduce it, was the one precluded from questioning the witness at the Grand Jury, not the government. The government had a full right to interrogate at the Grand Jury proceedings. If the government, at trial, should wish to contradict the testimony in the Grand Jury transcript out of the witness' own mouth, it would have the right, once the Grand Jury testimony was admitted, to call [the witness] to the stand and immunize him for the purpose of the cross-examination.

*Klauber,* 611 F.2d at 516 (dicta).

> [W]hen the *defendant* wishes to introduce the grand jury testimony that the government used to obtain his indictment, those concerns about reliability and accuracy are absent. Every factor present in the grand jury—the *ex parte* nature of the proceeding, the leading questions by the government, the absence of the defendant, the tendency of a witness to favor the government because of the grant of immunity, the absence of confrontation—is adverse to the interest of the defendants, not the government.

---

**3.** We note that, the Fifth Circuit avoided answering whether grand jury testimony is "former testimony." "This leaves us with the difficult question whether the Rule 804(b)(1) definition of 'former testimony' includes grand jury testimony." *Young Bros.,* 728 F.2d at 691. "We do not go out of our way to decide [whether grand jury testimony is admissible as former

testimony] since in this case if there was error it was harmless." *Id.* at 692.

**4.** As should be apparent, it would be a very different issue if the State sought to introduce the grand jury testimony of a witness against the defendant.

Yet it is the government here which seeks to avail itself of the protections of Fed.R.Evid. 804(b)(1). Since the witnesses were only unilaterally "unavailable" and could have been subjected to cross-examination by the government, we will not countenance the exclusion of their grand jury testimony on the ground of purported fairness to the government. *Salerno*, 937 F.2d at 807 (emphasis in original).

Because the State is the only party who may examine the witness during a grand jury proceeding, whatever testimony that is given at a grand jury is elicited solely through questioning by the State.

■ We hold that Comalander's grand jury testimony, as sought to be introduced against the State, falls within the former testimony exception to the hearsay rule. Tex.R.Crim.Evid. 804(b)(1).

■ However, our analysis of admissibility does not stop here. Appellant had possession of Comalander's entire grand jury transcript and was aware of its contents. Appellant's counsel, outside the presence of the jury, stated:

> the Defense, having been precluded from calling ... Comalander to give testimony ... has caused to be marked a true and correct copy and transcription of [her] testimony before the Tarrant County Grand Jury ... We ... offer the testimony for the consideration of the jury ... and we offer [it] for purposes of the record[.]

The State objected to the admission of the grand jury testimony for any purpose claiming it was hearsay. The trial judge responded, "I'm going to admit it for purposes of the record only. I'm not going to let [in] anything about the Grand Jury testimony, since she can't testify herself[.]"

In order to preserve error on a claim that evidence was improperly excluded "the substance of the evidence [must be] made known to the court by offer or [be] apparent from the context within which ques-

tions were asked." Tex.R.Crim.Evid. 103(a)(2). Here, appellant offered the transcript which was, in his trial counsel's words, "in excess of 70 pages of a typed statement of facts". Appellant never specified which portion he wanted to introduce into evidence.

Having read the entire transcript of Comalander's testimony and carefully scrutinized those portions of the testimony which appellant claims are exculpatory, we find that, with one exception to be discussed *infra*, the portions upon which he relies are all statements of what appellant told Comalander. Accordingly, appellant's out of court statements to Comalander are hearsay. Tex.R.Crim.Evid. 801. Appellant contends here that he wanted to introduce those portions of the grand jury testimony in which Comalander testified as to what appellant had told her about the crime. The only portion of the testimony which is not hearsay is Comalander's testimony that when appellant came home on the night that the deceased was killed he did not have blood on his shirt or pants. Inadmissible hearsay testimony does not become admissible simply because it is contained within an admissible document or transcript. *See* Tex.R.Crim.Evid. 805. The trial court need never sort through challenged evidence in order to segregate the admissible from the excludable, nor is the trial court required to admit only the former part or exclude only the latter part. If evidence is offered and challenged which contains some of each, the trial court may safely admit it all or exclude it all, and the losing party, no matter who he is, will be made to suffer on appeal the consequences of his insufficiently specific offer or objection. In this case, because the trial court chose to exclude the evidence, appellant is the party adversely affected by his own default.[5] Because appellant failed to specify which portion of the transcript he intended to introduce into evidence, the court was presented with a proffer containing both admissible and inadmissible evidence. When evidence which is partially admissi-

---

5. Much of this language discussing the "admissible from the excludable" is from an unpublished concurring opinion. *See Anderson v. State*, No.

0879–90 (Tex.Cr.App. May 15, 1991) (Benavides, J., concurring).

ble and partially inadmissible is excluded, a party may not complain upon appeal unless the admissible evidence was specifically offered. *See Schulz v. State,* 446 S.W.2d 872 (Tex.Cr.App.1969); Tex.R.Crim.Evid. 103(a)(2); *see and compare* Tex.R.Crim. Evid. 105(b). Thus, since the substance of the specific evidence that appellant sought to introduce was not presented to the court, it was not an abuse of discretion for the trial court to exclude the transcript. Appellant's first point of error is overruled.

■ In his second point of error appellant alleges that the trial court erred in admitting into evidence several items of the deceased's personal property which were seized from appellant's home. Appellant objected that neither the chain of custody nor the legality of the seizure had been established.[6]

With respect to appellant's claim that the chain of custody had not been established, we find that it had. The testimony of the victim's husband established that the articles belonged to the victim. The investigating officer testified that he had recovered the items from appellant's house, and appellant testified that those were the items that were in his house. *Stoker v. State,* 788 S.W.2d 1, 10 (Tex.Cr.App.1989), *cert. denied,* 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990).

As to his claim that the evidence was inadmissible because the search and seizure had not been established as consensual, appellant admits that a "hearing was held [on his pretrial motion to suppress the evidence] ... and the issues fully litigated" resulting in the court's order that the motion to suppress be denied. However, he

contends that the judge's pretrial ruling "was merely a preliminary finding and the facts concerning admissibility had to be proved at trial since the validity of the seizure was a fact issue subject to resolution by the jurors."[7] He contends that the burden was upon the State to show the legality of the search and seizure since it was warrantless. He cites as authority *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) and *Washington v. State,* 518 S.W.2d 240 (Tex. Cr.App.1975).

■ When the defendant in a case takes the witness stand and testifies to the possession of evidence which he has challenged as being unlawfully seized, he waives the error. *Sims v. State,* 502 S.W.2d 730, 731 (Tex.Cr.App.1973); *Creel v. State,* 493 S.W.2d 814, 819 (Tex.Cr.App. 1973). Moreover, we have held that where the defendant testifies to "the same facts that were proved by the State, error, if any, in admitting such facts was harmless." *Hill v. State,* 504 S.W.2d 484, 488 (Tex.Cr.App.1974) (citation omitted), *overruled for other reasons by Ex Parte Trahan,* 591 S.W.2d 837 (Tex.Cr.App.1979). Here, appellant waived any error when he admitted that he possessed the items in the house in an attempt to create a defense that he bought the items.[8] Appellant's second point of error is overruled.

In his third point of error appellant contends here that the trial court deprived him of effective assistance of counsel by refusing to allow his trial counsel to question the venire about considerations which he deemed relevant to answering the special

---

6. Specifically, appellant objected to "the premature introduction of [the exhibits] ... [because] these are items that ... came about as a result of a possible consent to search. The witness who purportedly signed the consent to search ... has not been presented either to the Court or the jury at this juncture, so we don't really know whether or not the consent to search was ... valid...." When the State told the judge that he had ruled the evidence admissible at a pretrial hearing, appellant added, "[t]hat's true, ... [but] [w]e still haven't proven up a chain of custody, ... we have not heard from [the witness] who, [can] show the validity of the consent to search ... and the chain of custody."

7. We note that appellant did ask that the jury be submitted a charge on, or be asked to determine, the validity of the consent to search form which was signed by appellant's girlfriend and housemate, Yelena Comalander.

8. *Maynard v. State,* 685 S.W.2d 60, 66 (Tex.Cr. App.1985) ("[I]f a defendant in testifying admits or confirms the truth of the facts or evidence objected to, even if attempting to create a defense based on or beyond those facts, a waiver of the objection does occur.").

issues. However, he does not set forth any ruling by the Court which prohibited him from asking the questions which he claims he should have been allowed to ask. Appellant's brief fails to cite any rulings on questions propounded by the defense. *See Thomas v. State*, 701 S.W.2d 653, 662 (Tex. Crim.App.1985). Although he explicitly states in his brief that "[t]his point of error is exclusively concerned with the restrictions on the defense voir dire," he has failed to show this Court that the trial judge restricted his voir dire in this area. Without such a showing, nothing is presented for review. Tex.R.App.P 52(a). Appellant's third point of error is overruled.

■ Appellant asserts, in his fourth point of error, that the trial judge erred by allowing the State to inform the veniremembers of the consequences of their answers to the special issues. In essence, appellant argues that since our law provides that the jury answers "yes" or "no" to the special issues and the judge assesses the death penalty, informing the veniremembers of the effect of their answers unnecessarily focuses their concern on whether or not they can impose the death sentence, something which they do not have the authority to do.[9] He argues, specifically, that this deprived him of a "conscientious" juror because a venirewoman was successfully challenged for cause due to her feelings about the death penalty.

Appellant is asking that we not allow the State the very vehicle by which they may show a veniremember's inability to consider the full range of punishment. The United States Supreme Court has held that a veniremember may be excluded for cause if "[his] views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Wainwright v. Witt*, 469

U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985) [citing *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980) ]; *see also Drinkard v. State*, 776 S.W.2d 181 (Tex.Cr.App.1989). Indeed, we are but following Supreme Court precedent in holding that "[a]ny information that is given the jury which may be interpreted by it as relieving [its responsibility for answering questions the result of which will determine the life or death of an individual] is considered an infraction on the jury's fact finding function." *Davis v. State*, 782 S.W.2d 211, 221 (Tex.Cr.App.1989), *cert. denied*, 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 520 (1990). To prevent the State from explaining to the veniremembers the effect of their answers to the special issues would tend to relieve them of their awesome responsibility to determine whether a defendant would live or die, and would also prevent the State from adequately eliciting a prospective juror's feelings about the death penalty. *See Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986). Appellant's fourth point of error is overruled.

■ In his fifth point of error appellant argues that his prosecution was barred by double jeopardy. During voir dire, before appellant's trial, Jacqueline Ann Godfrey was selected as a juror. She was excused by the judge until the first day of trial. Five weeks later, while voir dire was still in progress, Godfrey contacted the judge to tell him that she could no longer be a juror. A hearing was held at which she informed the court that she had spoken with her priest and had realized that she could not answer the special issues "yes" knowing that it would result in the death penalty. The State's challenge for cause against the juror was granted[10]. Appellant's motion

---

9. Appellant relies on *Hovila v. State*, 532 S.W.2d 293 (Tex.Cr.App.1975), *overruled for other reasons by Boulware v. State*, 542 S.W.2d 677, 683 (Tex.Cr.App.1976) to establish his claim. But in *Hovila* this Court wrote, "the fact remains that the jury will know that their answers will determine whether the defendant is to be punished by death or by life imprisonment. To say that the jury's answers would not be affected by their attitude toward the death penalty as a

punishment for crime simply because they will not bring forth the ultimate verdict would be to disregard the obvious." *Id.* at 294.

10. Although it is unusual for a challenge for cause to be lodged after the veniremember had already been chosen as a juror, this Court has allowed this procedure in special circumstances such as the one presented in this case. *See Thomas v. State*, 701 S.W.2d 653 (Tex.Cr.App.

for a mistrial was then granted on the basis that appellant's voir dire strategy hinged upon Godfrey being on the jury.

Appellant's contention that his subsequent trial was barred by double jeopardy fails. Jeopardy does not attach until a jury is impaneled and sworn. *See Crist v. Bretz*, 437 U.S. 28, 38, 98 S.Ct. 2156, 2162, 57 L.Ed.2d 24 (1978). Because only eight of the jurors at appellant's first trial were selected before the mistrial was declared the jury was not impaneled. *See Sanne v. State*, 609 S.W.2d 762, 769 (Tex.Cr.App. 1980), *cert. denied, Skillern v. Texas*, 452 U.S. 931, 101 S.Ct. 3067, 69 L.Ed.2d 432 (1981); *Steen v. State*, 92 Tex.Crim. 99, 242 S.W. 1047 (1922). Appellant's fifth point of error is overruled.

In his sixth point of error appellant contends that the trial court erred by refusing to allow him to introduce evidence of the parole procedures applicable to life sentences. Appellant, acknowledging the long line of caselaw which prohibits jurors from considering the operation of parole laws, attempts to characterize his contention as novel. He argues that jurors in capital cases should be allowed to consider parole laws because a capital murder jury, during its deliberations on punishment, must decide not the length of a sentence, but the qualitative issue of whether the defendant constitutes a continuing threat to society. Art. 37.071(b)(2), V.A.C.C.P. He argues that it is helpful to the jury in its resolution of the issue to be aware of the length of time a defendant will spend in the penitentiary before becoming eligible for parole if assessed a life sentence, and the methods used by the Board of Pardons and Paroles to determine parole eligibility. Appellant alleges that "without the information that [he] would be confined a minimum of 20 years, an intelligent decision on [the issue of future dangerousness] was impossible."

■ "The matter of parole is not a proper consideration for jury deliberation on punishment in a capital murder trial."[11] *Ellason v. State*, 815 S.W.2d 656, 665, n. 5 (Tex.Cr.App.1991). *See also Felder v. State*, 758 S.W.2d 760, 762 (Tex.Cr.App. 1988); *White v. State*, 629 S.W.2d 701, 708 (Tex.Cr.App.1981), *cert. denied*, 456 U.S. 938, 102 S.Ct. 1995, 72 L.Ed.2d 457 (1982); *O'Bryan v. State*, 591 S.W.2d 464, 478 (Tex.Cr.App.1979), *cert. denied*, 446 U.S. 988, 100 S.Ct. 2975, 64 L.Ed.2d 846 (1980).

■ In *Stoker v. State*, 788 S.W.2d 1 (Tex.Cr.App.1989), *cert. denied*, 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990), this Court held that a capital murder defendant was not entitled to present expert testimony regarding the parole laws because testimony regarding parole is "an impermissible area of inquiry for the jury." *Stoker*, 788 S.W.2d at 16. Thus, the trial court did not abuse its discretion by refusing to admit evidence regarding the functioning of the Board of Pardons and Paroles and the correctional consultant's opinion as to how long appellant would remain incarcerated.

■ Additionally, appellant attempted to present expert testimony that appellant would never be paroled. Appellant argues that this evidence is helpful to the jury because it could have considered the fact that appellant would never be paroled and thus, would never constitute a threat to society. Appellant's argument fails. This Court has held that "society" includes not only free citizens but also inmates in the penitentiary. *Boyd v. State*, 811 S.W.2d 105, 118 n. 12 (Tex.Cr.App.1991). Therefore, the length of time appellant remains incarcerated is not relevant to the issue of whether he will be a continuing threat to society. Appellant's sixth point of error is overruled.

1985); *Smith v. State*, 744 S.W.2d 86 (Tex.Cr. App.1987).

11. Interestingly, at the time of appellant's trial, article 37.07, section 4, V.A.C.C.P. allowed the jury to consider, in felony cases, how long someone would serve if assessed a life sentence. Here, the trial court vacillated on whether this applied to capital felonies as well. Ultimately, the trial court did not allow it. Four months after this case was tried, this Court held that it was unconstitutional for a jury to be instructed on parole laws. *Rose v. State*, 752 S.W.2d 529 (Tex.Cr.App.1987).

In his seventh point of error appellant contends that he was erroneously prevented from asking a proper question during his voir dire examination. He complains that this prevented him from making an intelligent use of his peremptory challenges.

Although we have held that disallowing the questioning of a prospective juror about a proper area of inquiry can never be harmless error,[12] in this case we need not reach the issue of whether the particular question was proper. Appellant was not called upon to decide whether to exercise his peremptory challenge against the venireman since the State had already struck that venireman. Appellant's seventh point of error is overruled.

In his eighth point of error appellant contends that the trial court erred by prohibiting him from impeaching a State's witness. Appellant sought to impeach the witness with her prior deferred adjudication and probation for theft. The trial court correctly disallowed this impeachment.

Rule 609 of the Texas Rules of Criminal Evidence, in effect at the time of appellant's trial, states that a party may impeach a witness with "evidence that [the witness] has been convicted of a crime." Tex.R.Crim.Evid. 609(a). Appellant concedes that the deferred adjudication involved in this case is not a conviction. *Baehr v. State*, 615 S.W.2d 713, 716 (Tex. Cr.App.1981); *McNew v. State*, 608 S.W.2d 166, 170–72 (Tex.Cr.App.1978). Further, denying a defendant the right to impeach a witness on the basis of the witness' deferred adjudication probation does not deny the defendant his constitutional right of confrontation. *See Callins v. State*, 780 S.W.2d 176, 196 (Tex.Cr.App.1989) (opinion on court's own motion for rehearing), *cert. denied*, 497 U.S. 1011, 110 S.Ct. 3256, 111

L.Ed.2d 766 (1990). Appellant's eighth point of error is overruled.

Appellant argues in point of error nine that his conviction is invalid because article 37.071(b)(2)[13] decreases the state's burden of proof from beyond a reasonable doubt to "probable". He argues that for each and every citizen there is a probability that the citizen may commit an act of violence that will constitute a threat to society and, therefore, the jury would have to answer special issue two "yes" in every case. Thus, he contends that the burden of proof is decreased so much as to render the question and the statute unconstitutional.

Appellant concedes in his brief that "[t]here is no question that the jurors were correctly informed that the [S]tate had the burden of proving beyond a reasonable doubt ... [the] special issues." He also concedes that the State is "required to prove beyond a reasonable doubt that a probability exists."

In *Sosa v. State*, 769 S.W.2d 909 (Tex.Cr.App.1989), this Court addressed the argument that, "since the jury is required to find only a *probability* that the defendant would commit criminal acts of violence that would constitute a continuing threat to society, the standard of proof is significantly less stringent than proof beyond a reasonable doubt." *Sosa*, 769 S.W.2d at 916. We held that "the use of the word 'probability' does not in any way reduce the burden of proving the special issues to anything less than beyond a reasonable doubt." *Id.* at 917. Appellant's ninth point of error is overruled.

In point of error ten appellant argues that the term "probability" as used in article 37.071(b)(2) is vague and indefinite. This Court has addressed this contention numerous times and has consistently held that the word "probability" is not vague or indefinite. *Lewis v. State*, 815 S.W.2d 560,

---

12. *Nunfio v. State*, 808 S.W.2d 482 (Tex.Cr.App. 1991).

13. Article 37.071(b)(2), V.A.C.C.P., in effect at the time of appellant's trial, provides:
   On conclusion of the presentation of the evidence, the court shall submit the following three issues to the jury:

(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.

563 (Tex.Cr.App.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1296, 117 L.Ed.2d 519 (1992); *Smith v. State,* 683 S.W.2d 393, 410–11 (Tex.Cr.App.1984); *Barefoot v. State,* 596 S.W.2d 875, 888 (Tex.Cr.App. 1980), *cert. denied,* 453 U.S. 913, 101 S.Ct. 3146, 69 L.Ed.2d 996 (1981); *Granviel v. State,* 552 S.W.2d 107, 117 (Tex.Cr.App. 1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1977). Appellant does not present any argument or authority that would require overruling this case-law. Point of error number ten is overruled.

In his eleventh point of error appellant contends that the Eighth Amendment to the United States Constitution bars the imposition of his death sentence because his sentencing jury was not allowed to consider mitigating factors in deciding whether he constituted a continuing threat to society.

Appellant was tried in July of 1987, two years before the Supreme Court's decision in *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). Appellant argues that, because *Penry* had not yet been decided, he did not request a special instruction which would allow the jury to consider any evidence which might mitigate against their decision to answer yes to both questions, and, thereby, impose the death penalty. Further, he argues that without such an instruction, he chose not to introduce any mitigating evidence which was beyond the scope of the two special issues, nor did he make an offer of proof setting forth what mitigating evidence he would have offered.

▆ In cases tried before *Penry,* a defendant who failed to request a special mitigating evidence instruction or failed to object to the court's charge does not waive error in the *Penry* context. *See Ex Parte Goodman,* 816 S.W.2d 383, 385 (Tex.Cr. App.1991); *Black v. State,* 816 S.W.2d 350, 364 (Tex.Cr.App.1991). However, if mitigating evidence is not presented or proffered at the trial, we will not address the issue of its probativeness and the failure of *Penry* compliance. "[W]e have always held that [mitigating] *evidence* was admissible and, thus, we are disinclined to excuse

noncompliance in the area of *introducing* mitigating evidence." *Goodman,* 816 S.W.2d at 386, n. 6 (emphasis in original).

▆ By his own admission, the only evidence which appellant introduced at trial as mitigating was that he had a good record of behavior in prison. The Supreme Court of the United States has expressly held that this type of evidence is not *Penry*-type mitigating evidence which requires an additional instruction, rather it can be given full effect through the second special issue. *Franklin v. Lynaugh,* 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988). Appellant's eleventh point of error is overruled.

Appellant alleges, in his twelfth point of error, that the trial court erred by excusing a venirewoman on a challenge for cause on the basis of her bias against the death penalty. Appellant argues that the venirewoman's answers did not indicate that her views on the death penalty would prevent or substantially impair her performance as a juror.

▆ This Court has followed the United States Supreme Court in holding that a veniremember may be challenged for cause when it is shown that the veniremember's views on the death penalty would "prevent or substantially impair the performance of his or her duties in accordance with the oath taken and the trial judge's instructions." *Crane v. State,* 786 S.W.2d 338, 343 (Tex.Cr.App.1990) [quoting *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)]. The trial court's ruling on a challenge for cause on this basis is reversible only if it was clearly an abuse of discretion. *Goodwin v. State,* 799 S.W.2d 719, 731 (Tex.Cr.App.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2913, 115 L.Ed.2d 1076 (1991).

▆ The record reflects that the venirewoman stated several times that due to her feelings about the death penalty and her understanding of the effect of her answers, she could not answer the special issues "yes" regardless of what facts might be proven to her beyond a reasonable doubt. She testified that the only situation that she could imagine in which she could an-

swer the issues "yes" would be if the victim was either her child, her mate, or her sibling. The record is replete with the venirewoman's responses indicating that her feelings toward the death penalty would prevent or substantially impair her ability to exercise her duties as a juror. The trial judge did not abuse his discretion in sustaining the State's challenge for cause against this veniremember. Appellant's twelfth point of error is overruled.

In his thirteenth point of error appellant alleges that he was erroneously denied the right to voir dire the jury on the parole laws applicable to the lesser included offense of murder and, therefore he was prevented from intelligently exercising his peremptory strikes. *Rose v. State,* 752 S.W.2d 529 (Tex.Cr.App.1987). Because the jury found appellant guilty of capital murder and no charge was given on parole law, any error was harmless. *See King v. Lynaugh,* 850 F.2d 1055, 1061 (5th Cir. 1988) (en banc). Appellant's thirteenth point of error is overruled.

In his fourteenth point of error appellant contends that the trial court erred by not allowing him to ask Detective Larry Steffler what Detective James Bennett told Yelena Comalander, who was arrested trying to pass one of the victim's checks, as to what was going to happen to her. He contends that this did not call for a hearsay answer because he was not asking the question to prove the truth of the matter asserted. *See* Tex.R.Crim.Evid. 801(d). Appellant contends that this evidence was relevant to the issue of the voluntariness of his confession.

Rule 105(b), Tex.R.Crim.Evid., provides that the exclusion of evidence which may be admissible for a limited purpose "shall not be a ground for complaint on appeal unless the proponent expressly offers the evidence for its limited, admissible purpose...." Because appellant failed to inform the trial court that he sought to have the evidence admitted for its limited purpose he may not complain of its exclusion on appeal. Tex.R.Crim.Evid., 105(b). Appellant's fourteenth point of error is overruled.

Appellant contends, in his fifteenth point of error, that the State made an improper jury argument. Specifically, he claims that during the prosecutor's closing argument at the punishment phase of the trial she erroneously argued, "Ladies and gentlemen, *I think that under the evidence* under your oath that you swore to as jurors *the answer is yes.*"

The prosecutor may not argue her personal opinion or belief about a case. *Villalobos v. State,* 568 S.W.2d 134 (Tex.Cr.App. 1978). However, she may argue that the evidence shows a certain contention. *United States v. Morris,* 568 F.2d 396, 402 (5th Cir.1978). *See also Villalobos.* Thus, the argument in this case was proper. Appellant's fifteenth point of error is overruled.

In his sixteenth point of error appellant claims that the trial court erred in denying his motion for mistrial based upon the State's comment on his failure to testify. Art. 38.08, V.A.C.C.P.

Appellant testified during the guilt/innocence phase of his trial. After appellant completed his testimony the prosecutor said to the court, "Your Honor, at this time I would like to make it clear that we intend to reserve the right to further cross-examination, right to recall for further cross-examination." Appellant asked that the jury be instructed to disregard the remark as it was a comment on appellant's right to not testify. The court instructed the jury that "[appellant will] not be called back again unless it's by the Defendant first, or his attorneys first (sic)." Appellant then moved the court to grant a mistrial; that motion was denied.

The State did not indirectly comment on appellant's choice not to testify, indeed it could not have since appellant did testify. To the extent that the jury may have taken the State's remarks as such, the trial court's instruction informing the jury that the State could not call the defendant back to the stand was sufficient to cure any error. *Hammond v. State,* 799 S.W.2d 741, 748 (Tex.Cr.App.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2912, 115

L.Ed.2d 1076 (1991). Appellant's sixteenth point of error is overruled.

■ In his seventeenth point of error appellant alleges that the trial court erred by denying his request that the jury be allowed to visit his jail cell to see it for themselves. Appellant requested the jury view to show the cell from which authorities removed a homemade weapon, a "shank", which was introduced into evidence at the punishment phase of the trial. Appellant contends that because the shank was not conclusively shown to have belonged to him the jury should have been allowed to see the design and layout of the jail cells.

It is within the trial court's discretion to deny a jury view. Indeed, jury views are denounced in this state. *Weeks v. State*, 476 S.W.2d 310 (Tex.Cr.App.1972). Appellant was allowed to introduce into evidence numerous photographs of appellant's cell, photographs showing the juxtaposition of the cells, and a diagram of the cell. Therefore it was not an abuse of discretion for the trial court to have precluded appellant from taking the jury inside the county jail in order to personally view the cell, even though, as appellant points out, the trip to the county jail would have only taken a total of four minutes. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Cr.App. 1991) (opinion on court's own motion for rehearing). Appellant's seventeenth point of error is overruled.

In point of error number eighteen appellant asserts that the trial court erred by overruling his hearsay objection and allowing t'⸺ State to introduce evidence that appellant was a suspect in the case. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence *to prove the truth of the matter asserted.*" Tex.R.Crim.Evid. 801(d); *see Schaffer v. State*, 777 S.W.2d 111, 115 (Tex.Cr.App. 1989).

■ At the guilt/innocence phase of the trial the arresting officer testified that af-

ter listening to another detective question Yelena Comalander he began to suspect appellant in this offense, and that he then had an arrest warrant issue for appellant. The State argues that this testimony is not hearsay because it was not introduced for the truth of the matter asserted, but to explain how the officer came to suspect appellant, seek an arrest warrant for him, and then arrest him.

Because the statement was not offered to prove the truth of the matter asserted, but to show why the officer got an arrest warrant for and arrested appellant it was not objectionable as hearsay. Appellant's eighteenth point of error is overruled.[14]

■ In his nineteenth and twentieth points of error, appellant complains of blood samples taken from the deceased and appellant, respectively, that were admitted into evidence over his objections.

In his nineteenth point of error, appellant contends that State's exhibit forty-four (44), the deceased's blood sample, was identified by a witness who lacked personal knowledge of the matter. Tex.R.Crim. Evid. 602. A serologist with the Fort Worth Police Department testified that she received the deceased's blood sample from an investigator at the medical examiner's office. Appellant contends that because the serologist did not personally take the sample from the deceased, she did not have personal knowledge of its source. The State responds that the trial court properly allowed the serologist to identify the deceased's blood sample under Tex.R.Crim. Evid. 104(b) and even if there was error, it was harmless because the deceased's blood was subsequently identified by a witness with personal knowledge. Tex.R.App.P. 81(b)(2).

Immediately following the serologist's testimony, the Chief Medical Examiner for Tarrant County testified that he performed the autopsy on the deceased and identified State's Exhibit 44 as a vial of blood that he drew from the deceased during the autopsy. He then stated that he sealed the

---

**14.** Additionally, we note that the jury had heard other evidence that appellant was a prime sus-

pect. Therefore, even assuming error, it was harmless. Tex.R.App.P. 81(b)(2).

sample and released it to the serologist. Appellant's nineteenth point of error is overruled.

■ In his twentieth point of error, appellant contends that State's exhibit forty-five (45), appellant's blood sample, contained hearsay because the vial was labeled with appellant's name. Appellant asserts that the purpose of the label containing his name "was to prove the truth of the matter asserted—that the vial contained the Appellant's blood," and therefore was inadmissible hearsay. Tex.R.Crim.Evid. 801(d). The State responds that the label containing appellant's name was offered for the limited purpose of identification and that appellant failed to preserve error by not requesting a limiting instruction. Tex.R.Crim.Evid. 105(a).

Out of the jury's presence and upon appellant's voir dire examination, the serologist testified that another serologist drew appellant's blood sample in her presence. She also stated that appellant was identified by a detective who was also present when the blood was drawn, and that the other serologist then placed the label on the sample. Assuming without deciding that the label was hearsay, the identity of the blood sample was established in another manner, thus rendering the alleged inadmissible hearsay harmless. *See Mayes v. State*, 816 S.W.2d 79, 88 (Tex.Cr.App.1991); *Livingston v. State*, 739 S.W.2d 311, 333 (Tex.Cr.App.1987), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988); Tex.R.App.P. 81(b)(2). The serologist later testified in the jury's presence without objection that State's Exhibit 45 was a blood sample taken from appellant in her presence. Appellant's twentieth point of error is overruled.

■ In his twenty-first point of error, appellant contends that the trial court erred in allowing testimony about the details of a prior adjudicated offense at the punishment phase of trial. Over appellant's objection, the State's witness testified to the facts and details surrounding the commission of an aggravated robbery of a fast-food restaurant by appellant in 1982. The trial court ruled that the testimony was relevant to the special issues under article 37.071, V.A.C.C.P.. Appellant argues that the State is not permitted to introduce the facts and details of a prior conviction and cites *Johnson v. State*, 650 S.W.2d 784 (Tex.Cr.App.1983); *Carter v. State*, 614 S.W.2d 821 (Tex.Cr.App.1981); *Walker v. State*, 610 S.W.2d 481 (Tex.Cr. App.1980). *Johnson* holds that in non-capital cases testimony at punishment of specific details of a prior conviction are not permitted. *Carter* and *Walker*, also non-capital cases, concern prosecutorial misconduct in eliciting specific testimony of prior convictions. Since the instant case is a capital offense, the cited cases are not controlling.

Further, this Court has held that the introduction of the facts and details of a relevant prior conviction at the punishment phase of a capital trial is permissible under article 37.071, V.A.C.C.P.. *Davis v. State*, 597 S.W.2d 358 (Tex.Cr.App.1980), *cert. denied*, 449 U.S. 976, 101 S.Ct. 388, 66 L.Ed.2d 238 (1980); *see Lane v. State*, 822 S.W.2d 35, 41 (Tex.Cr.App.1991). Here, appellant was charged with capital murder involving a kidnapping and a robbery. At the guilt/innocence phase of the trial, appellant admitted committing the prior aggravated robbery. The details of that conviction, as set forth at the punishment phase, are relevant under Tex.R.Crim.Evid. 401 to the jury's determination of the special issues. Appellant's twenty-first point of error is overruled.

■ In points of error twenty-two, twenty-three, and twenty-four appellant contends that the trial court erred by admitting photographs which were gruesome and cumulative of other photographic evidence. Appellant contends that because he was willing to stipulate to the identity of the deceased as well as the cause of death, the photos were not necessary to the case, nor did they serve any purpose other than to inflame the jury. He argues that the introduction of this photographic evidence, although probative, was unduly prejudicial.

Tex.R.Crim.Evid. 403.[15] Rule 403 provides that,

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

Tex.R.Crim.Evid. 403.

Having reviewed the exhibits in this case, we note that appellant objected to each of the six photographs of the victim which the State admitted. The victim had been stabbed seventeen times on the left side of her face and neck and was then set on fire. The offending photographs were of the victim's charred body at the scene where it was discovered, and photographic enlargements taken at the autopsy of the victim. Three of the photos depict the victim in the woods where her charred body was found: one is a view of the victim's body from the head looking down toward her feet and depicts her as she was found; one is a view of the victim's body from the front and depicts her as she was found; and one is a view of the victim's body from the back after she was rolled away from the log against which she was placed to be burned. These three photos show that the victim's hands and legs were behind her body, as though bound, and show that the part of her body next to the log suffered the most burn damage. The other three photos were taken in the medical examiner's office before the autopsy was performed and depict the seventeen stab wounds to the victim's face neck and throat. Each of these photos related to testimony given at trial.

"The admissibility of a photograph is within the sound discretion of the trial judge.... Generally, this Court has held photographs admissible if verbal testimony as to matters depicted in the photographs is also admissible. [citations omitted]. An abuse of discretion arises only when the probative value of the photograph is small and its inflammatory potential great." *Ramirez v. State*, 815 S.W.2d 636, 646–647 (Tex.Cr.App.1991) (citation omitted). Because these photos are few in number, depict the wounds inflicted upon the victim, the location and position in which she was discovered, and were the subject of testimony at trial, their probative value is not outweighed by their possible prejudicial effect. We find that the trial judge did not abuse his discretion in admitting these photos. *Ramirez.* Appellant's points of error twenty-two, twenty-three, and twenty-four are overruled.

The judgment of the trial court is affirmed.

BAIRD, Judge, concurring.

While I join the majority opinion, I write separately to further address appellant's first point of error.

## I.

Yelena Comalander, after a grant of immunity, testified before the grand jury concerning this cause. Comalander was subsequently indicted for aggravated perjury.[1] At trial, appellant called Comalander as a witness. Comalander invoked her right against self-incrimination as guaranteed under the Fifth Amendment to the United States Constitution, Article I, Section 10 of the Texas Constitution, and Tex.Code Crim. Proc.Ann. art. 1.05, and did not testify. Appellant requested a grant of immunity for any testimony Comalander might give but the trial judge overruled appellant's request. Appellant then offered into evidence a transcription of Comalander's testimony before the grand jury. The State

---

**15.** As authority, appellant also relies on *Martin v. State*, 475 S.W.2d 265 (Tex.Cr.App.), *cert. denied*, 409 U.S. 1021, 93 S.Ct. 469, 34 L.Ed.2d 312 (1972). However, we have recently held that, for cases tried after the enactment of the Texas Rules of Criminal Evidence, *Martin* no longer controls the question of admissibility of photographs. *Long v. State*, 823 S.W.2d 259, 272 (Tex.Cr.App.1991).

**1.** In addition to being indicted for aggravated perjury, at the time of appellant's trial Comalander had also been indicted for forgery, two cases of credit card abuse and charged with misdemeanor offense of tampering with evidence. All of those cases arose out of events related to appellant's trial.

**502**

objected to the grand jury testimony as being hearsay and the trial judge sustained the objection.

## II.

I agree Comalander's testimony before the grand jury was admissible under the former testimony exception provided by Tex.R.Crim.Evid.Ann. 804(b)(1). However, as the majority correctly concludes, the trial judge properly excluded that testimony.

In *Ford v. State*, 51 S.W. 935, 41 Tex. Cr.R. 1 (1899), the State offered portions of the testimony of a co-defendant who had testified at a habeas corpus hearing. The defendant then offered the *entire* testimony of the co-defendant. The State objected and the trial court informed the defendant that he could read to the jury any other portions of the co-defendant's testimony which referred to the matters contained in those portions of the testimony offered by the state. However, when the defendant persisted in offering the entire testimony of the co-defendant the trial judge sustained the State's objection and excluded the testimony. *Ford*, 51 S.W. at 936–937. Relying on earlier decisions, we held:

> ... Where some of the evidence objected to is admissible, and some of it not, it is necessary that the bill of exceptions point out that portion of the evidence which is admissible. Where a party offers all of a record, and says it is admissible, and a part of it might be admissible, and part evidently is not, we will not select out for appellant that part which is admissible, but he must do so himself in his bill of exceptions. (citations omitted).

*Ford*, 51 S.W. at 937.

In *Schulz v. State*, 446 S.W.2d 872 (Tex. Cr.App.1969) the defendant attempted to offer the *admissible* testimony of his psychiatrist to establish that Schulz was receiving treatment. However, Schulz also attempted to offer the *inadmissible* testimony of his psychiatrist that it would be better for Schulz to receive probation. The trial judge excluded all of the psychiatrist's testimony and we held:

> In the present case not all of the proffered testimony of [the psychiatrist] was

admissible. If [Schulz] wanted the court to admit the testimony that he had been receiving treatment from a psychiatrist ... he should have specifically pointed out that part of the testimony to the court. The applicable rule is stated in 53 American Jurisprudence, Sec. 140, pp. 124–125:

> > "It is not incumbent upon the trial court, where evidence offered is relevant or admissible in part only, to separate the good from the bad but it may reject the evidence as a whole."

> The same rule is stated in I Wigmore on Evidence, Third Edition, Sec. 17, p. 320: "It is for the proponent to sever the good and the bad parts." (Citations omitted).

*Schulz v. State*, 446 S.W.2d at 874.

As the majority correctly notes, the rule is the same today: "When evidence which is partially admissible and partially inadmissible is excluded, a party may not complain upon appeal unless the admissible evidence was specifically offered." *Jones v. State*, 843 S.W.2d 487, 493 (Tex.Cr.App. 1992). Therefore, although the trial court erroneously excluded the testimony of Comalander on the basis that it was not admissible as former testimony pursuant to Tex.R.Crim.Evid. 804(b)(1), that ruling will not be disturbed on appeal because appellant failed to specifically offer the portions of the testimony which were admissible. As some portions of Comalander's testimony were admissible while other portions were inadmissible, appellant had the burden of severing "the good and the bad parts" and specifically offering the admissible portions. Because appellant failed to do so, the trial judge did not err in excluding entire testimony of Comalander.

With these comments I join the majority opinion.