Opinion issued June 7, 2012



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00637-CR

———————————

Kenneth Andre Thompson, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 174th District Court

Harris County, Texas



Trial Court Case No. 1217654

 



 

MEMORANDUM
OPINION

          A jury convicted appellant
Kenneth Andre Thompson of aggravated robbery, see Tex. Penal Code Ann.
§ 29.03 (West 2011), and the trial court found that a firearm had been
used during the commission of the offense. 
Thompson pleaded true to an enhancement paragraph alleging a prior
conviction for aggravated robbery.  The
jury sentenced him to 30 years in prison and assessed a $1,000 fine.  In two issues, Thompson argues that the trial
court erred by permitting the State to elicit backdoor hearsay, which is also
known as inferential hearsay, over his objections and in violation of the Rules
of Evidence and the Confrontation Clause. 
We modify the judgment to correct unrelated errors concerning Thompson’s
plea and the jury’s finding on the enhancement paragraph, and we affirm the
judgment as modified.

Background

          Three
repairmen were working all day on the air conditioning system of a church in
Houston.  The workers observed that they
were being watched by a small group of people in an empty lot next to the
church.  At the end of the day, one of
the repairmen, M. Jukola, began to return his tools
to his truck while the other repairmen finished inside.  As he walked back and forth, he kept the
truck door closed, but unlocked.  On his
last trip to the truck, Jukola saw a man reach inside
the truck’s rear passenger door to grab two cases of tools and then start to
walk away.  Jukola
caught up to the man to ask what was going on. 
The man turned around and said, “Get away.  I’ll shoot,” or similar words, and then he flashed
a revolver.  Jukola
recognized the man as someone whom he had seen earlier loitering in the nearby
parking lot.  The man turned and walked
away with the tool cases.

          Jukola shouted for his fellow repairmen who were still
inside the church.  One of them, L.
Diggs, came outside to see the man walking away with the tools.  While calling 911, Diggs followed the man
down the street and saw him enter the fourth house down from the church.  Diggs did not see the man’s face.

When the police
arrived in response to Diggs’s 911 call, the owner of
the house, P. Jones, consented to a search, but the police did not find the
suspect there, nor did they find the tools or a revolver.  The police scoured the neighborhood but did
not find the man matching the description provided to them.  As part of the police investigation, Officer
E. Arjona performed a “location check,” which he
described as a “detailed log of any kind of incident, phone numbers,
individuals that may live at the house . . . .  [I]t’s like a database of information of
who’s there, who frequents.”  Based on
this information, Officer Arjona identified Thompson
as a suspect.

About a week after the
robbery, Officer Arjona prepared a photo array of six
people, including Thompson, and he showed the array to Jukola.  Jukola immediately
identified Thompson’s photo as depicting the robber.  After Thompson was charged with the robbery,
Officer Arjona returned to the neighborhood and spoke
with Jones, the owner of the house that Diggs had identified to police.  He questioned Jones about Thompson living
there.  That interview led Officer Arjona to conclude that Thompson was the right suspect.

          Jukola, Diggs, Officer Ajona, and
another police officer testified at Thompson’s trial.  The State subpoenaed Jones, but Jones refused
to cooperate and did not testify at trial. 
Nevertheless, the State questioned
Officer Arjona about his interview of Jones after
Thompson was charged with the robbery. 
The first line of questioning occurred during direct examination:

STATE:       At some point after the
defendant is charged, do you go back to the house . . . ?

ARJONA:    Yes, I did.

STATE:       And when you go back to
the house, do you speak with anyone?

ARJONA:    Yes, I did.

STATE:       Tell us who you spoke
with.

ARJONA:    I spoke to a gentleman by
the name of [P.], who claims he lived and owned —

DEFENSE:  Objection, Your Honor, to
anything that Mr. [P.] said as hearsay.

STATE:       Judge, I think he’s
specifically talking about [P.] Jones at this point.

COURT:      Overruled.

STATE:       Who did you meet with
when you went to the house?

ARJONA:    [P.] Jones.

STATE:       Okay.  And did [P.] Jones identify himself as the homeowner?

ARJONA:    Yes.

STATE:       Did you talk to [P.] Jones about whether or not the defendant lived at the
home?

DEFENSE:  Again, Your Honor, I’m
going to object.  Not only is it hearsay,
but it denies me the right to cross-examine Mr. Jones unless he testifies.

STATE:       Judge, I haven’t asked
him about anything Mr. Jones said.  All I
asked him was if he spoke to him.

COURT:      Overruled.

STATE:       Did you speak with [P.] Jones about whether or not the defendant had lived at
that location?

ARJONA:    Yes.

STATE:       You can’t go into what
Mr. Jones said.  Okay?  And by that time, you certainly had the
defendant identified by photo and by name.

ARJONA:    Yes.

STATE:       Okay.  Without going into what Mr. Jones said, after
speaking with him, did it confirm your opinion as to whether or not you have
the right person?

ARJONA:    Yes.

STATE:       On that day in speaking
with Mr. Jones and going out to the neighborhood, did you continue to attempt
to locate the defendant?

ARJONA:    Yes.

On cross-examination, Thompson’s counsel asked Officer Arjona what evidence he had to suspect Thompson as the
robber, besides Jukola’s identification.  Officer Arjona
replied, “That’s all I have, sir.”  Once
Thompson’s counsel passed the witness, the State’s counsel approached the bench
to argue that Thompson’s counsel had “opened the door” for rebuttal
because Jones’s statements to Officer Arjona
constituted other evidence that Thompson was the robber.  During the bench discussion, counsel for the
State said, “I’m not going to ask [Officer Arjona]
specifically what Mr. Jones said.”  Thompson
persisted in his objection, saying, “I’ll just put my objection on the
record.  Number one, it’s hearsay.  Number two, it denies me my right to confront
and cross-examine Jones.”  The trial court
responded, “[The State] just told you it’s not going to come in.”  The trial court did not expressly rule on the
objection.  The State then resumed its examination
of Officer Arjona, and the following line of
questioning took place:

STATE:       Now, defense counsel
asked you a question as to whether or not this identification
. . . of the defendant by Mr. Jukola
was the only evidence tying the defendant to that case.  You remember that question?

ARJONA:    Yes.

STATE:       You remember speaking
with [P.] Jones?

ARJONA:    Yes, I do.

STATE:       Okay.  And certainly the defendant or from what you
learned in doing your location check, that the defendant was associated with
that house.

ARJONA:    That’s correct.

STATE:       Okay.  Mr. Jones knew the defendant?

ARJONA:    Yes.

STATE:       Would it be fair to say
that him and the defendant are friends?

ARJONA:    That’s correct.

STATE:       Or would it be friends
or family?  Do you know?

ARJONA:    I don’t know if they’re
friends or family.

STATE:       Without going into what
Mr. Jones said, okay, did your conversation with him corroborate the
identification that Mr. Jukola made of the defendant,
Kenneth Thompson?

ARJONA:    Yes.

The State then passed the witness.

The jury convicted
Thompson of aggravated robbery.  It found
true an enhancement allegation for a prior aggravated robbery, and it sentenced
Thompson to 30 years in prison and assessed a $1,000 fine.

Analysis

          In
his first issue on appeal, Thompson argues that the State improperly elicited backdoor
hearsay when Officer Arjona testified about Jones’s
out-of-court statements.  See, e.g., Schaffer v. State, 777 S.W.2d 111, 114 (Tex. Crim. App. 1989) (“[W]here
there is an inescapable conclusion that a piece of evidence is being offered to
prove statements made outside the courtroom, a party may not circumvent the
hearsay prohibition through artful questioning designed to elicit hearsay
indirectly.”).  Thompson argues that
because he was unable to cross-examine Jones about the statements concerning
whether he lived at the house, Officer Arjona’s
indirect testimony regarding those statements violated the rule against
hearsay, Tex. R. Evid.
802, and the Confrontation Clause.  In his second issue, he argues that the trial
court abused its discretion in admitting the testimony.

The State argues that
Thompson failed to object to the testimony when it was elicited to rebut a
false impression created during cross-examination, and therefore the issue is
not preserved for appellate review.  The
State further argues that even if the issue was preserved, Officer Arjona’s testimony was not hearsay, and even if it was, the
admission of that testimony was harmless.

Ordinarily, to preserve error, there must be a timely, specific objection
and an adverse ruling by the trial court. 
Tex. R. App. P. 33.1.  Even constitutional error may be waived by
failure to object at trial.  Briggs v. State, 789
S.W.2d 918, 924 (Tex. Crim. App. 1990). 
A defendant waives his constitutional right to confront witnesses if he
does not timely object to testimony on that ground.  See Holland
v. State, 802 S.W.2d 696, 700 (Tex. Crim. App. 1991); Campos v. State, 186 S.W.3d 93, 98 (Tex. App.—Houston [1st Dist.]
2005, no pet.).  A general hearsay
objection does not preserve error on the ground that the testimony violates the
Confrontation Clause.  Reyna v. State, 168 S.W.3d 173, 179
(Tex. Crim. App. 2005).

The record reflects that during the State’s direct examination of Officer
Arjona concerning his interview with Jones, Thompson’s
counsel objected, “Not only is it hearsay, but it denies me the right to
cross-examine Mr. Jones unless he testified.” 
This objection reflects two distinct grounds for the objection: hearsay
and the right to cross-examine.  Although
Thompson’s objection does not expressly refer to the Confrontation Clause, the
essence of a Confrontation Clause violation is that it denies a criminal
defendant the procedural right to cross-examine witnesses against him.  See
Crawford v. Washington, 541 U.S. 36, 61, 124 S. Ct. 1354,
1370 (2004) (observing the Confrontation Clause guarantees that the reliability
of evidence may be tested “in the crucible of cross-examination”).  Unlike Reyna
v. State, 168 S.W.3d 173 (Tex. Crim. App. 2005), and Austin v. State, 222 S.W.3d 801 (Tex. App.—Houston [14th Dist.]
2007, pet. ref’d), the inability to cross-examine was
distinctly articulated as a ground for objection separate from the hearsay
objection.  Thus, the objections on
hearsay and Confrontation Clause grounds were made with “sufficient specificity
to make the trial court aware of the complaint.”  See Tex. R. App. P. 33.1(a)(1)(A).

With respect to the
testimony that the State elicited on direct examination, Thompson’s
sufficiently specific objections paired with the trial court’s adverse ruling
preserves the hearsay and Confrontation Clause issues for our review.  Tex. R. App. P. 33.1(a).  We hold that Thompson did not waive appellate
review of the testimony elicited on direct examination.  See Tex. R. App. P. 33.1(a).  However,
when the State approached the bench for permission to question Officer Arjona for rebuttal purposes, Thompson did not obtain a ruling on his renewed objections.  Nor did he object during the State’s
re-direct examination when Officer Arjona testified
about speaking with Jones.  Because
Thompson did not timely object or obtain a ruling with respect to the re-direct
testimony, we hold that the hearsay and Confrontation Clause issues are not
preserved as to that testimony.  See id.; see also Tex. R. Evid. 802 (“Inadmissible hearsay admitted without
objection shall not be denied probative value merely because it is hearsay.”).

          Assuming without deciding that the trial court
erroneously admitted Officer Arjona’s testimony on
direct examination in violation of the Rules of Evidence and the Confrontation
Clause, such errors are subject to a harm analysis.  See
Tex. R. App. P. 44.2; Clay v. State, 240 S.W.3d 895, 905–06
& n.12 (Tex. Crim. App. 2007) (conducting harmless error analysis on
hearsay); Rubio v. State, 241 S.W.3d
1, 3 (Tex. Crim. App. 2007) (“[A]ny Confrontation
Clause violation, once proven, is subject to harmless error analysis.”).  We will reverse the conviction “unless we
determine beyond a reasonable doubt that the error did not contribute to the
appellant’s conviction.”  Rubio, 241 S.W.3d at 3.  “If there is a reasonable likelihood that the
error materially affected the jury’s deliberations, then the error was not
harmless beyond a reasonable doubt.”  Id.  We calculate the probable impact of the error
in light of all other available evidence. 
Id.

When a trial court
erroneously admits backdoor hearsay, but the matter asserted by the
out-of-court statement is otherwise established through other admitted
evidence, no harm is done to the party challenging the hearsay.  See Clay,
240 S.W.3d at 905–06 (holding that erroneously admitted hearsay “established
little, if anything, negative about appellant that was not also well
established by the properly admitted evidence” and was therefore harmless); Burks v. State, 876 S.W.2d 877, 898
(Tex. 1994) (holding that erroneously admitted backdoor hearsay was harmless
because other testimony proved same facts); Jones
v. State, 843 S.W.2d 487, 499 n.14 (Tex. Crim. App. 1992) (observing that
potential error of admitting backdoor hearsay was harmless because jury heard
other similar evidence), overruled on
other grounds, Maxwell v. State,
48 S.W.3d 196, 198 (Tex. Crim. App. 2001). 
The same rule applies with respect to evidence elicited in violation of
the Confrontation Clause.  See Davis v. State, 203 S.W.3d 845,
853–56 (Tex. Crim. App. 2006) (observing that testimony admitted in violation
of Confrontation Clause was cumulative of other admitted evidence and holding
that error was harmless beyond a reasonable doubt).

In this case, the
alleged error that was preserved for review is that Officer Arjona
provided on direct examination backdoor hearsay establishing that Jones told
him that Thompson lived at the house, and that this error also violated
Thompson’s right to confront witnesses under the Confrontation Clause.  However, Officer Arjona’s
re-direct testimony established substantially the same fact, and any possible
error in admitting that testimony was not preserved for appellate review.  In light of the testimony elicited on
re-direct examination without a contemporaneous objection, we conclude that
there is no reasonable likelihood that the alleged error of admitting substantially
the same testimony on direct examination materially affected the outcome of the
jury’s deliberations.  See Rubio, 241 S.W.3d at 3. 
Thus, assuming that the trial court erred in admitting backdoor hearsay
on direct examination in violation of the Confrontation Clause, we hold that
the alleged error was harmless.  See Clay, 240 S.W.3d at 905–06 &
n.12; Davis, 203 S.W.3d at 853–56; Burks, 876 S.W.2d at 898; Jones, 843 S.W.2d at
499 n.14; Tex. R.
App. P. 44.2(a).

          We
overrule Thompson’s two issues.

Modification
of the Judgment

          The judgment reflects a plea of “N/A”
with respect to the first enhancement paragraph and a finding of “N/A” with
respect to the same.  However, the
reporter’s record reflects that Thompson pleaded “true” with respect to a
single enhancement paragraph, which alleged that Thompson previously had been
convicted of aggravated robbery, and that the jury found that the allegations
in the enhancement paragraph were “true.” 
The parties have not brought to this court’s attention the discrepancy
between the judgment and the reporter’s record. 
Nevertheless, “[a]n appellate court has authority to reform a judgment
to include an affirmative finding to make the record speak the truth when the
matter has been called to its attention by any source.”  French
v. State, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (citing Asberry v. State, 813 S.W.2d 526, 529 (Tex.
App.—Dallas 1991, pet. ref’d)); accord Nolan v. State, 39
S.W.3d 697, 698 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (observing that appellate court has the power to reform the judgment
to make the record speak the truth when it has the necessary data and
information); see also Tex. R. App. P. 43.2(b).  We conclude that the record supports modification
of the judgment because it does not reflect that Thompson pleaded “true” to the
first enhancement paragraph and that the jury found the same to be “true.”  Accordingly, we modify the judgment to
reflect Thompsons’ plea of “true” and the jury’s finding of “true” with respect
to that enhancement paragraph.

Conclusion

We modify the trial court’s judgment to reflect that
Thompson pleaded “true” to the first enhancement paragraph and that the jury
found the same to be “true.”  We affirm
the judgment of the trial court as modified.

 

 

 

                                                                      Michael
Massengale

                                                                      Justice


 

Panel consists of Justices Keyes, Higley, and Massengale.

Do not publish.   Tex. R.
App. P. 47.2(b)