**Affirmed as Modified and Memorandum Opinion filed August 22, 2013.**



In the

## Fourteenth Court of Appeals

### NO. 14-12-00389-CR

**DONTREAL DAVAL BROWN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1231465**

## M E M O R A N D U M   O P I N I O N

Appellant Dontreal Daval Brown was convicted by a jury of capital murder. The trial court sentenced appellant to mandatory life without parole. On appeal, he presents five issues. First, appellant contends the trial court committed reversible error in the application paragraph of the jury charge. Second, appellant argues that the trial court committed reversible error by excluding former testimony of a witness from a co-defendant's trial. Third, he argues that the court costs imposed

in his judgment are supported by insufficient evidence. And fourth and fifth, appellant contends that mandatory life without parole violates both the United States and Texas Constitutions. We sustain appellant's third issue. Finding no reversible error in his remaining issues, we modify the trial court's judgment to delete the specific amount of costs, and affirm the judgment as modified.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Dontreal Daval Brown was indicted for the felony offense of capital murder, alleged to have been committed on or about August 31, 2009.

On August 31, 2009, shortly after 10:00 p.m., a car pulled up to the Siesta Food Mart. A man later identified as Milton Holiday entered the convenience store, bought a bottle of water from the clerk, Joe Fernandes, and exited the store. Approximately ten minutes later, three other men—appellant, Vondra Joseph, and Neiman Nelson—entered the store, "clothed from head to toe, including gloves." Both appellant and Joseph were carrying firearms that appeared to be semi-automatic. The men had previously met at Joseph's house and decided to "hit a lick," which means they planned "to go rob someone." After the men entered the store, Nelson demanded money from the clerk, but he either could not or did not know how to open the cash register. Joseph fatally shot the clerk in the abdomen.

Detectives Mike Miller and Todd Miller with the Houston Police Department's homicide division downloaded the store's surveillance video, and publicly released still images of Holiday and the car.[1] As a result, Holiday turned himself in. Holiday provided a voluntary statement, which led to the development of appellant, Joseph, and Nelson as the suspects involved in the robbery.

M. Miller and T. Miller interviewed appellant, in custody for another

---

[1] This vehicle belonged to Holiday.

2

criminal matter at the time, and appellant provided a voluntary statement. Appellant's statement generally corroborated the store's video footage; appellant stated that he and Joseph had guns during the robbery and that Joseph shot Fernandes. According to appellant, Joseph shot Fernandes because he "jumped at" appellant. Nothing in the video shows any attempt by Fernandes to "jump at" appellant or defend himself in any way.

The jury convicted appellant of capital murder, and the trial court assessed appellant's punishment at automatic life in prison without the possibility for parole. In five issues, appellant argues that the trial court committed error (1) in its jury charge, by allowing appellant to be convicted as a party to capital murder under a reduced burden of proof; (2) by denying the admission of Holiday's prior testimony from Joseph's capital murder trial; (3) by imposing court costs of $280 without sufficient evidence; and (4) and (5) by imposing mandatory life without parole in violation of the Eighth Amendment and article 1, section 13, of the Texas Constitution.

## II. ANALYSIS

### A. There was no error in the trial court's jury charge.

In his first issue, appellant argues that language used in the application paragraph of the jury charge was ambiguous and allowed his conviction of capital murder—as a party pursuant to section 7.02(a)(2) of the Texas Penal Code—based solely on proof that he was a party to robbery. Appellant further contends that he properly preserved charge error, and that inclusion of the misleading application paragraph caused him "some harm." The State responds that no error existed in appellant's charge, any error is subject to review for egregious harm because appellant failed to specifically object to this application paragraph, and appellant was not egregiously harmed. We conclude that no error existed in the jury charge.

3

### 1. Standard of review

We review a claim of jury charge error using the two-step procedure set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). We first determine whether there is error in the charge. *Id.* (citing *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005)). Then, if error is found, we analyze that error for harm. *Celis v. State*, —S.W.3d—, No. PD-1584-11, 2013 WL 2373114, at *3 (Tex. Crim. App. May 15, 2013) (citing *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012)).

Error preservation does not become an issue unless harm is assessed. *See Middleton v. State*, 125 S.W.3d 450, 453–54 (Tex. Crim. App. 2003). If there was error and the appellant objected at trial, we reverse if the error "is calculated to injure the rights of the defendant," which has been defined to mean that there is "some harm." *Barrios*, 283 S.W.3d at 350 (quoting *Almanza*, 686 S.W.2d at 171). If the error was not objected to, it must be "fundamental" to be reversible, meaning we reverse only if the error was so egregious and created such harm that the defendant "has not had a fair and impartial trial." *Id.* (quoting *Almanza*, 686 S.W.2d at 171).

### 2. The trial court's jury charge

Appellant's indictment for capital murder alleged that he, on or about August 31, 2009, did unlawfully, while in the course of committing and attempting to commit the robbery of Joe Fernandes, intentionally cause Fernandes's death by shooting him with a firearm. A person commits the offense of murder if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011). A person commits the offense of capital murder if he intentionally commits such murder in the course of committing or attempting

4

to commit the offense of robbery. *Id.* § 19.03(a)(2) (West Supp. 2012). A person is criminally responsible for an offense committed by the conduct of another if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2) (West 2011).

The charge included a standard instruction on the law of parties that substantially tracked section 7.02(a)(2). The charge then instructed in the application paragraph at issue:

> Now, . . . [i]f you find from the evidence beyond a reasonable doubt that on or about the 31st day of August, 2009, in Harris County, Texas, Vondra Joseph and/or Milton Holiday and/or Neiman Nelson, did then and there unlawfully, while in the course of committing or attempting to commit the robbery of Joe Fernandes, intentionally cause the death of Joe Fernandes by shooting Joe Fernandes with a deadly weapon, namely a firearm, and that defendant, Dontreal Daval Brown, with the intent to promote or assist the commission **of the offense**, if any, solicited, encouraged, directed, aided or attempted to aid Vondra Joseph and/or Milton Holiday and/or Neiman Nelson to commit **the offense**, if he did;
>
> . . . then you will find the defendant guilty of **capital murder**, as charged in the indictment.

(Emphases added).

At the charge conference, appellant's trial counsel objected to the trial court's inclusion of "the offense" language in both places as an "improper comment on the weight as it is in the charge" and requested that the court define those "offenses" for the jury. The trial court overruled the objections.

## 3. There was no error in the application paragraph at issue.

Appellant argues that a plain reading of the challenged application paragraph authorized the jury to convict him of capital murder under section 7.02(a)(2) based

5

on proof that he intended to promote or assist "the offense" of robbery alone, not that he intended to promote or assist the actual killing of Fernandes. Appellant supports this argument with no authority, but instead insists that the undefined references to "the offense" would "actively mislead" a reasonable jury because "[s]hooting someone is not necessarily an offense whereas 'robbery' does carry that connotation." We disagree.

"In examining the charge for possible error, reviewing courts must examine the charge as a whole instead of a series of isolated and unrelated statements." *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012) (internal quotation marks omitted). Here, the jury charge contained the correct abstract definition of party liability according to section 7.02(a)(2). The application paragraph specified that it applied to appellant's indicted charge of capital murder,[2] and the jury charge contained the correct abstract definitions of murder and capital murder. Thus, the State's theory under section 7.02(a)(2) was:

- Joseph committed murder by intentionally or knowingly causing Fernandes's death by shooting him with a firearm;

- Joseph committed capital murder by intentionally committing murder in the course of commission of a robbery; and

- appellant committed capital murder because he was criminally responsible for Joseph's commission of murder in the course of commission of a robbery by, with intent to promote or assist Joseph's conduct in shooting Fernandes and causing his death, soliciting, encouraging, directing, aiding, or attempting to aid Joseph in Fernandes's murder.

We cannot agree that a reasonable jury would have been confused or misled by the application paragraph's use of "the offense" because this language was

---

[2] The application paragraph for the lesser offense of aggravated robbery by threat followed later in the charge. The charge specified that the jury was only to consider aggravated robbery if it had a reasonable doubt or could not agree on capital murder.

6

unambiguous. In *Holford v. State*, the First Court of Appeals considered a virtually identical section 7.02(a)(2) application paragraph. 177 S.W.3d 454 (Tex. App.—Houston [1st Dist.] 2005, pet ref'd). There, as here, the appellant argued that use of the term "the offense" within the application paragraph was ambiguous and thus the jury was permitted "to convict him as a party to capital murder if he intended to aid only in the robbery, as opposed to the required intent to aid in the murder." *Id.* at 460. The challenged application paragraph in *Holford* stated:

> If you find from the evidence beyond a reasonable doubt that on or about the 13th day of January, 2002, in Harris County, Texas, Harold Louis Vaughn, did then and there unlawfully while in the course of committing or attempting to commit the robbery of Trevor Cook, intentionally cause the death of Trevor Cook by [cutting Trevor Cook with a deadly weapon, namely a knife/striking Trevor Cook with a deadly weapon unknown to the Grand Jury], and that the defendant, David Charles Holford, with the intent to promote or assist the commission of **the offense**, if any, solicited, encouraged, directed, aided or attempted to aid Harold Louis Vaughn to commit **the offense**, if he did;
>
> . . . then you will find the defendant guilty of **capital murder**, as charged in the indictment.

*Id.* (emphases added). The *Holford* court concluded that there was no charge error:

> Read logically, the prepositional phrase "with the intent to promote or assist the commission of the offense" refers to Cook's murder, that occurred "while in the course of committing or attempting to commit the robbery." Likewise, the clause "solicited, encouraged, directed, aided or attempted to aid Harold Louis Vaughn to commit the offense" refers to Cook's murder.

*Id.* at 461. Similarly, a logical reading of appellant's application paragraph leads us to the same conclusion. As in *Holford*, appellant's charge describes capital murder as murder necessarily occurring while in the course of committing or attempting to commit robbery, and thus required the jury to find that appellant,

7

with the intent to promote or assist Joseph in intentionally causing the death of Fernandes, solicited, encouraged, directed, aided, or attempted to aid Joseph in intentionally causing the death of Fernandes, while in the course of committing or attempting to commit robbery. *See id.* "[W]hile in the course of committing or attempting to commit the robbery" functions solely as a subordinate adverb clause that describes when Fernandes's murder must have occurred. "[T]he offense" in the prepositional phrase "with the intent to promote or assist the commission of the offense" refers back to the immediately preceding noun clause "that . . . Joseph . . . did then and there unlawfully . . . intentionally cause the death of Joe Fernandes by shooting Joe Fernandes with a deadly weapon, namely a firearm." Thus, "the offense" is Fernandes's murder. *See id.* Likewise, "the offense" in the verb phrase "solicited, encouraged, directed, aided or attempted to aid [Joseph] to commit the offense" refers back to Fernandes's murder. *See id.*

We conclude that no error existed in the application paragraph at issue, which properly permitted the jury to find appellant guilty of capital murder as a party under section 7.02(a)(2). Finding no error in the jury charge, we need not reach appellant's arguments as to harm,[3] and therefore, we overrule his first issue.

---

[3] Even if there were error in the challenged application paragraph, and allowing that appellant sufficiently preserved error, we cannot agree that the record reveals "some harm." *See Barrios*, 283 S.W.3d at 350; *see also Vasquez*, 389 S.W.3d at 368–69 (jury charge error harm assessment considers entire jury charge, state of the evidence, arguments of counsel, and other relevant information). A review of the entire jury charge reveals proper abstract instructions on capital murder, murder, and section 7.02(a)(2) party liability; and the application paragraph at issue specified that it applied to the indicted charge of capital murder. Moreover, the charge properly instructed the jury on party liability to capital murder as a co-conspirator. *See* TEX. PENAL CODE ANN. § 7.02(b) (West 2011). The state of the evidence reveals that, as discussed *infra* in Section II.B.2, the jury reasonably could have found appellant had the intent to promote or assist Fernandes's murder beyond a reasonable doubt. This evidence also would have permitted a rational jury to convict appellant as a party to capital murder as a co-conspirator, which does not require specific intent to promote or assist murder, but rather only that murder should have been anticipated by appellant as a result of carrying out the conspiracy to commit robbery. *See id.* Finally, no one argued at closing that a section 7.02(a)(2) party conviction for

*See Celis*, 2013 WL 2373114, at *3 ("Because there is no charge error in this case, we need not conduct a harm analysis."); *Barrios*, 283 S.W.3d at 353 (same).

## B. The trial court did not reversibly err in excluding Holiday's former testimony.

In his second issue, appellant argues that the trial court abused its discretion when it refused to admit portions of Holiday's prior testimony at Joseph's trial on the basis of hearsay. Appellant maintains "Holiday's testimony would have corroborated [appellant's] contention that he did not intend to kill Joe Fernandes when they robbed the convenience store." We conclude that the trial court did not abuse its discretion in excluding Holiday's former testimony and, in any event, any error in excluding the testimony was harmless.

Rule 804(b)(1) allows the admission of former testimony if a declarant is unavailable as a witness. TEX. R. EVID. 804(b)(1) (providing that "[i]n criminal cases, testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination" is not excluded as hearsay). We review a trial court's decision on whether to admit former testimony under rule 804(b)(1) for an abuse of discretion. *Coffin v. State*, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994) (en banc). We do not conduct a de novo review, but instead limit our role to determining whether the record supports the trial court's ruling. *Id.* A trial court's exclusion of testimony is an abuse of discretion only if the decision lies outside the zone of reasonable disagreement. *See Kelly v. State*, 824 S.W.2d 568, 574 (Tex. Crim.

---

capital murder only required a showing that appellant specifically intended to promote or assist the robbery. In fact, the State emphasized its section 7.02(b) co-conspirator theory, which alternative theory the jury was properly permitted to convict appellant of based on the charge. *See Holford*, 177 S.W.3d at 462–63 (jury need not choose unanimously between theories of primary or party liability where sole actus reus is murder).

9

App. 1992); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). A trial court abuses its discretion only if we can say with confidence that no reasonable perception of the matter under consideration could have yielded the court's decision. *See Montgomery*, 810 S.W.2d at 391.

A witness is rendered unavailable if he invokes his Fifth Amendment privilege not to testify. *Jones v. State*, 843 S.W.2d 487, 490 (Tex. Crim. App. 1992), *abrogated on other grounds*, *Maxwell v. State*, 48 S.W.3d 196 (Tex. Crim. App. 2001) (grand jury witness); *Bryan v. State*, 837 S.W.2d 637, 644 (Tex. Crim. App. 1992), *abrogated on other grounds*, *Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999) (defendant); *see* TEX. R. EVID. 804(a)(1) (witness is unavailable if he "is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement"). "[H]earings on the allegation brought against a criminal defendant," including trials and grand jury proceedings, satisfy the requirement that the testimony be given at "another hearing of the same or a different proceeding." *See Jones*, 843 S.W.2d at 490–91 (citing TEX. R. EVID. 804(b)(1)). The final requirement for admission under rule 804(b)(1) is that the "party against whom the testimony is now offered had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." *Id.* (citing TEX. R. EVID. 804(b)(1)). This serves to protect the party against whom the hearsay evidence is offered from the ill-effects of not being able to examine the witness who gave the testimony. *Id.* at 491. Rule 804(b)(1) does not require that the opponent of the evidence have had an "identical" motive to develop the testimony, but rather only requires that he have had a "similar" motive. *Coffin*, 885 S.W.2d at 147.

**1. The trial court did not abuse its discretion in excluding Holiday's testimony.**

Appellant contends that Holiday's former testimony meets all of rule 804(b)(1)'s requirements. During his guilt phase, outside the presence of the jury, appellant called Holiday to the stand. Holiday, who had testified for the State at Joseph's trial but whose criminal case was still pending, invoked the Fifth Amendment. Appellant then moved to have certain pages of Holiday's testimony from Joseph's trial admitted as former sworn testimony. The State objected on the basis of hearsay, and the trial court sustained the objection.

The only requirement at issue is whether the State's motive to develop Holiday's testimony was similar. *See id.* Holiday's former testimony does not come from grand jury proceedings for the same trial, as in *Jones*, or from a retrial of the same defendant, as in *Bryan*. The State argues that, even though Joseph and appellant were co-defendants, the State did not have a similar enough motive to develop Holiday's testimony in Joseph's trial for purposes of incriminating appellant.

Presuming without deciding, for purposes of our analysis, that Holiday's former testimony fell within rule 804(b)(1), we still conclude the trial court did not abuse its discretion in refusing to admit the proffered testimony. Our analysis of admissibility does not stop at whether Holiday's former testimony meets rule 804(b)(1). *See Jones*, 843 S.W.2d at 492. When a trial court excludes evidence, part of which is admissible and part of which is not, the party on the adverse side of the ruling must separate the admissible evidence from the inadmissible evidence and state the reason for its admissibility, e.g., which exception to the hearsay rule he was relying upon or specifying how the evidence was not hearsay. *See Willover v. State*, 70 S.W.3d 841, 845–46 (Tex. Crim. App. 2002); *Jones*, 843 S.W.2d at

11

492–93; *see also* TEX. R. EVID. 103(a)(2). This is because "[i]nadmissible hearsay testimony does not become admissible simply because it is contained within an admissible document or transcript." *Jones*, 843 S.W.2d at 492 (citing TEX. R. EVID. 805). This is also because, as the *Jones* court explained in upholding the exclusion of grand jury witness testimony:

> The trial court need never sort through challenged evidence in order to segregate the admissible from the excludable, nor is the trial court required to admit only the former part or exclude only the latter part. If evidence is offered and challenged which contains some of each, the trial court may safely admit it all or exclude it all, and the losing party, no matter who he is, will be made to suffer on appeal the consequences of his insufficiently specific offer or objection.

*Id.* Our review reveals that the requested excerpt of Holiday's testimony contains both admissible evidence—what appellant, Joseph, and Nelson did upon returning to the car after the robbery—and presumptively inadmissible hearsay evidence— appellant's and Joseph's out-of-court statements to Holiday. Although appellant's trial counsel identified certain transcript pages that he wanted to be admitted, he did not segregate and specifically offer which portions of Holiday's testimony he sought to have admitted. The only reason appellant provided in support of admission of the entirety of the excerpt was rule 804(b)(1).[4] Under these circumstances, the trial court was within its discretion to disallow all of the requested evidence. *See Willover*, 70 S.W.3d at 847 (citing *Jones*, 843 S.W.2d at 492–93).

---

[4] Specifically, appellant's trial counsel stated: "This is not hearsay. It's sworn testimony. And [Holiday] has made himself unavailable, Judge. . . . I have made the Court aware of my understanding of the hearsay exception to former testimony." Even on appeal, appellant never specifies how his out-of-court statements to Holiday would not otherwise be inadmissible as hearsay.

## 2. Any error in excluding Holiday's testimony was harmless.

Appellant contends the trial court's error prevented him from presenting evidence in support of his defense that he did not have specific intent to kill Fernandes.[5] However, we conclude that any error in the exclusion of Holiday's former testimony was harmless. "With respect to the erroneous admission or exclusion of evidence, constitutional error is presented only if the correct ruling was constitutionally required; a misapplication of the rules of evidence is not constitutional error." *Fox v. State*, 115 S.W.3d 550, 563 (Tex. App.—Houston [14th Dist.] 2002, pet ref'd). Thus, we generally analyze harm under rule 44.2(b) because the error is not constitutional. *Id.*; *see* TEX. R. APP. P. 44.2. We disregard such evidentiary error unless it affected appellant's substantial rights; that is, if it had a substantial and injurious effect or influence on the jury's decision. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

Our examination of the entire record leads us to conclude that the alleged error did not affect any substantial right of appellant. First, substantially similar testimony was admitted into evidence. The proposed testimony from Holiday was that appellant asked Joseph why he shot Fernandes, and Joseph answered, "Because he tried to grab me." T. Miller testified appellant gave a statement that the reason Joseph shot Fernandes was because the clerk "jumped at" or "grabbed" appellant, and appellant did "say he didn't know that was going to happen."

Moreover, there was other evidence from which the jury could have reasonably inferred appellant's intent to promote or assist Joseph in the murder of Fernandes beyond a reasonable doubt. *See Motilla v. State*, 78 S.W.3d 352, 360

---

[5] We note appellant does not argue that the erroneous exclusion of evidence amounted to denial of his due process or other constitutional right. *See Potier v. State*, 68 S.W.3d 657, 659 (Tex. Crim. App. 2002) (en banc).

(Tex. Crim. App. 2002) ("Though not dispositive, the evidence of the defendant's guilt is a relevant factor in conducting a harm analysis under Rule 44.2(b)."). Appellant agreed to participate in "hitting a lick" at the convenience store and served as the second gunman to Joseph. Appellant was captured on video as he participated in the robbery with a semi-automatic firearm. He was shown checking the manager's office, "crouching down with the gun out," walking with "his gun out," and going "behind the counter with the victim." Appellant was holding the firearm "[t]o be able to use it." Finally, M. Miller testified that firearms are deadly weapons, and it was "not unusual" and was "common sense" for someone to end up hurt or dead in robberies involving firearms. *See Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996) ("The jury may infer the intent to kill from the use of a deadly weapon unless it would not be reasonable to infer that death or serious bodily injury could result from the use of the weapon."). And T. Miller testified appellant did not indicate "particularly" that he was shocked or surprised by Joseph's having shot Fernandes. On this record, we cannot conclude that the exclusion of Holiday's testimony had a "substantial or injurious" influence. *See King*, 953 S.W.2d at 273.

## C. The trial court erred in awarding a specific amount of court costs against appellant.

In his third issue, appellant argues that there was insufficient evidence to support the court costs of $280 assessed against him in the judgment. Appellant contends that because there is no certified bill of costs, there is no way to determine whether any costs are for attorney's fees, which he contends cannot be assessed against indigent defendants. *See* TEX. CODE CRIM. PROC. ANN. art. 26.04(p) (West 2011).

In *Johnson v. State*, 389 S.W.3d 513, 516 (Tex. App.—Houston [14th Dist.]

14

2012, pet. granted), we held that when the record does not support the assessment of a certain dollar amount in costs, the trial court errs in entering a specific dollar amount in its judgment. Appellant specifically requested the district clerk to include the bill of costs in the appellate record, but none was provided.

The State responds that numerous provisions in the Texas Code of Criminal Procedure and the Local Government Code authorize various court costs to be paid by appellant, totaling $404. Thus, the evidence is sufficient to support the $280 in court costs assessed. We rejected this precise argument in *Rogers v. State*, — S.W.3d—, No. 14-12-00182-CR, 2013 WL 2442194, at *8 (Tex. App.—Houston [14th Dist.] June 6, 2013, no pet. h.). Therefore, because there is no evidence in the record to support the trial court's assessment against appellant of $280 as court costs, we sustain his third issue and modify the trial court's judgment to delete the specific dollar amount of costs assessed. *See id.*; *Johnson*, 389 S.W.3d at 516.

## D. The trial court did not violate appellant's constitutional rights by imposing life without parole.

In his fourth and fifth issues, appellant argues that the automatic punishment of life without parole[6] is unconstitutional under the Eighth Amendment of the United States Constitution, as well as article 1, section 13, of the Texas Constitution, because the sentencing scheme provides no vehicle for the consideration of mitigating evidence.[7] We disagree.

Appellant acknowledges that this court consistently has held that a mandatory life sentence does not amount to cruel and unusual punishment under either constitution. *E.g., Wilkerson v. State*, 347 S.W.3d 720, 723 (Tex. App.—

---

[6] *See* TEX. PENAL CODE ANN. § 12.31(a) (West 2011).

[7] Appellant preserved error on these issues in a pretrial motion challenging the constitutionality of the automatic life sentence statute.

15

Houston [14th Dist.] 2011, pet. ref'd). In *Wilkerson,* we rejected the appellant's argument that *Harmelin v. Michigan*[8] applied with less force after the issuance of *Graham v. Florida.*[9] 347 S.W.3d at 722–73. We determined that *Graham* did not control where the appellant was not a juvenile and was not convicted of a non-homicide crime, but *Harmelin* still did. *Wilkerson,* 347 S.W.3d at 723.

Since we decided *Wilkerson,* the Supreme Court has extended *Graham* to hold that a sentence of mandatory life without parole for those under the age of eighteen at the time of their crimes violates the Eighth Amendment. *Miller v. Alabama,* —U.S.—, 132 S. Ct. 2455, 2460 (2012). Appellant argues that we must reconsider *Harmelin* in light of and extend *Miller* to adult offenders. We disagree. In *Miller,* the Court specifically stated that its holding "neither overrules nor undermines nor conflicts with *Harmelin.*" 132 S. Ct. at 2470. Further, the Court explained at length how it is the fact of youth itself that precludes mandatory sentencing schemes for juveniles: "a sentencer misses too much if he treats every child as an adult." *Id.* at 2467–68 ("[M]andatory penalties, by their nature, preclude a sentencer from taking account of an offender's age and the wealth of characteristics and circumstances attendant to it.").

We conclude that *Harmelin* and *Wilkerson* still control, and we overrule appellant's fourth and fifth issues.

---

[8] In *Harmelin v. Michigan,* the Supreme Court held that the imposition of a mandatory sentence of life in prison without parole, without consideration of mitigating factors, did not constitute cruel and unusual punishment, and refused to extend the individualized sentencing doctrine to the term-of-years context. 501 U.S. 957, 994–96 (1991).

[9] In *Graham v. Florida,* the Supreme Court held that it was unconstitutional for a juvenile to be sentenced to life without parole for a non-homicide crime. 560 U.S. 48, 130 S. Ct. 2011, 2034 (2010).

16

### III.     CONCLUSION

Having sustained appellant's third issue, we modify the judgment to delete the specific amount of court costs.  Having found no reversible error otherwise, we affirm the judgment as modified.


/s/     Tracy Christopher
        Justice


Panel consists of Justices Brown, Christopher, and McCally.

Do Not Publish — TEX. R. APP. P. 47.2(b).