In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-17-00014-CR
NO. 09-17-00015-CR

_____

**JOEL ERIC HOLDER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 410th District Court**
**Montgomery County, Texas**
**Trial Cause No. 15-03-03172-CR (Counts 1 and 2)**

**MEMORANDUM OPINION**

Joel Eric Holder appeals from two judgments, rendered following a jury trial,

in which the jury found him guilty of murdering James Kiernan and assaulting "John

Jones"[1] with a motor vehicle.[2] In three appellate issues, Holder argues that the trial

---

[1] In this opinion, we use "John Jones" as a pseudonym for the individual who is identified by name in Count Two of this indictment. *See* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

[2] *See* Tex. Penal Code Ann. § 19.02(b)(1) (West 2011) (murder, when based on a finding that the defendant "intentionally or knowingly causes the death of an

1

court abused its discretion by (1) excluding a video recording of Holder's custodial interview following his arrest; (2) denying Holder's motion for a mistrial, which he requested shortly after the prosecutor mentioned in closing argument that Holder "would be subject to cross" had he chosen to testify; and (3) during the punishment phase of Holder's trial, allowing the prosecutor to ask Kiernan's mother to "share with the [trial court] your feelings on what should happen in this case, what would feel like justice to you."[3] For the reasons explained below, we affirm the trial court's judgments.

Background

Early one morning in late March 2015, Holder's girlfriend, Christina Robinson, left Holder's house and went to Evelyn Eden's home to see her friend "Jane Smith." Holder came to Eden's house later that same morning looking for Christina. Smith told Christina that Holder was outside, but Christina chose not to

_____

individual"); § 22.02(a)(2) (West 2011) (aggravated assault, when based on a person's use or exhibition of "a deadly weapon during the commission of the assault"). Holder's convictions are based on a grand jury indictment, issued in June 2015, alleging that Holder, on or about March 28, 2015, committed three crimes: (1) murdering James Kiernan; (2) assaulting "John Jones" with a motor vehicle, which Holder used or exhibited as a deadly weapon; and (3) assaulting "Jane Smith" with a tire tool or similar object, which Holder used or exhibited as a deadly weapon. In the opinion, we use "Jane Smith" as a pseudonym for the individual who is identified by name in Count Three of the indictment. *See* Tex. Const. art. I, § 30.

[3] After the trial court overruled Holder's objection, Kiernan's mother suggested that she would like Holder to receive a life sentence.

talk to him, while Smith, Kiernan, and Jones went outside. When Holder was sitting in his truck, parked in Eden's driveway, Kiernan, Jones, and Smith told Holder to leave. According to Jones, Holder began to back out of the driveway, but he then reversed direction and drove his truck over Kiernan and Jones while they were walking back toward Eden's home. During Holder's trial, Jones testified that the body of Holder's truck hit him and knocked him down but that the truck struck Kiernan and rolled over him twice.

During Holder's trial, Eden testified that she was standing near a gate to the house when the incident occurred. Eden is Smith's mother. She explained that she saw Holder strike Kiernan and Jones with his truck. According to Eden, after Holder ran over the men, Holder put the truck into reverse and then backed over them again. After that, Holder got out of his truck and struck Kiernan twice in the head with a tire iron.

The police arrested Holder around ten o'clock that morning shortly after Holder left Smith's driveway. About four hours later, the police interviewed Holder about why he hit Kiernan and Jones with his truck and a tire iron.

Two medical experts testified in Holder's trial. The experts addressed the injuries that caused Kiernan's death. Dr. Lucille Tennant, a forensic pathologist called by the State, explained that Kiernan died from the combination of injuries that he suffered to his torso and head. According to Dr. Tennant, Kiernan's injuries were

3

consistent with being run over by a motor vehicle and then being hit in the head with a tire iron. Dr. LeeAnn Grossberg, a forensic pathologist called by Holder, testified that Kiernan's injuries resulted from being run over by a motor vehicle. She opined that the injuries inflicted by the truck caused Kiernan's death.

Jones testified in Holder's trial about the injuries that he received on March 28 while he was walking up Eden's driveway. According to Jones, Holder hit him with his truck as he was walking towards Eden's house. Jones testified the collision caused a "[g]ash mark [to his] face[,]" a fracture to his ribs, and a mild concussion. At the end of the guilt-innocence phase of Holder's trial, the jury found Holder guilty of murdering Kiernan and found that Holder committed an aggravated assault against Jones. The jury, however, acquitted Holder on a third charge, which alleged that he assaulted Smith with a tire tool or similar object. At Holder's election the trial court assessed his punishment. At the conclusion of the punishment phase of the trial, Holder received a life sentence for murdering Kiernan and a twenty-year sentence for committing the aggravated assault against Jones.

Holder's Custodial Interrogation by Police

In issue one, Holder argues that the trial court abused its discretion by refusing to admit the video recording of his custodial interview during the guilt-innocence phase of his trial. According to Holder, his custodial interview, obtained by police several hours after he hit Kiernan and Jones with his truck, should have been

4

admitted into evidence under various exceptions to the hearsay rule.[4] Holder concludes that had the trial court admitted the recording, the evidence would have required the trial court to instruct the jury on his claim that he had acted in self-defense when he struck Kiernan and Jones with the truck and tire tool.

We use an abuse-of-discretion standard to review complaints about a trial court's decision to admit or to exclude evidence. *See Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *see also Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). If the ruling was correct under any theory of law that applies to the case, the ruling will not be overturned on appeal. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). To establish that the trial court made an error in admitting evidence, the defendant must establish that the ruling "was so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

Holder advances five arguments to support his theory that the trial court erred by excluding the recording the police made of his custodial interview. First, Holder suggests the recording was admissible as a business record, an argument that relies

---

[4] Rule 802 of the Texas Rules of Evidence generally prohibits the admission of hearsay. Tex. R. Evid. 802. Rule 801(d) defines "hearsay" as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Tex. R. Evid. 801(d).

on the exception for business records that is found in Rule 803(6). *See* Tex. R. Evid. 803(6) (Records of a Regularly Conducted Activity).[5] During the trial, Holder asked that the trial court admit the recording based on his claim that it was relevant to his claim of self-defense. Even if the recording might have been relevant for that reason, however, the circumstances surrounding the recording show that when the police interviewed Holder, hours after the collision, Holder knew that the police were investigating why he struck Kiernan and Jones with his truck.[6] Thus, the circumstances allowed the trial court to conclude that Holder, when he agreed to the custodial interview, had self-serving reasons to claim that he had acted in self-defense.

---

[5] A record of an act, event, condition, opinion, or diagnosis is not excluded by the hearsay rule if the record was made at or near the time by—or from information transmitted by—someone with knowledge; the record was kept in the course of a regularly conducted business activity; the business that made the record made it as a regular practice; all these conditions are shown by the testimony of the custodian or another qualified witness; and finally, that the opponent fails to demonstrate the source of information or the method or circumstances of preparing the record indicate a lack of trustworthiness. *See* Tex. R. Evid. 803(6).

[6] The circumstances show that before the custodial interview began, Holder was advised that he was under arrest and advised about the rights he had to an attorney. *See Miranda v. Arizona*, 384 U.S. 436, 474 (1966). In *Miranda*, the United States Supreme Court held that police must warn a suspect about his right to counsel before questioning the suspect about the crime that resulted in the defendant's arrest. *Id*.

In 2004, the Court of Criminal Appeals explained that even if the record is otherwise admissible as a business record, it does not necessarily follow that every statement in such a record is admissible if the circumstances show that the statement came from a person "who is outside the business and who has no business duty to report or to report accurately[.]" *Garcia v. State*, 126 S.W.3d 921, 926 (Tex. Crim. App. 2004) (footnotes omitted). In Holder's case, Holder was neither employed by the Montgomery County Sheriff's Department, nor did he owe the Montgomery County Sheriff's Department a business duty to provide Detective Steve Mullis (the detective who conducted the custodial interview) an accurate version of what happened earlier that day.

Because Holder's statements alleging that he had acted in self-defense were self-serving and made after Holder had time to reflect on what he might say to avoid being charged with criminal acts, the trial court could reasonably conclude that Holder's version about what happened that day lacked the circumstantial guarantees of trustworthiness required to justify admitting someone's statement under the business records exception to the hearsay rule. *See* Tex. R. Evid. 803(6)(E) (providing that a business record is not admissible if made under circumstances showing the record is untrustworthy). We conclude the trial court acted within its discretion by determining that the recording was inadmissible as a business record under Rule 803(6). *See Crane v. State*, 786 S.W.2d 338, 353-54 (Tex. Crim. App.

7

1990) (explaining that when tape recordings of the defendant's telephone calls from jail to his family members were offered to prove that the defendant suffered blackouts, the defendant's "self-serving hearsay statements" in the recordings, offered as business records, failed to "possess the fundamental trustworthiness as contemplated in the business record exception").

Second, Holder argues that his custodial interview was admissible as a present sense impression under Rule 803(1)[7] of the Texas Rules of Evidence. According to Holder, the recording depicts him describing the events that occurred that morning. Holder suggest that because the interview occurred the same day as the events, his statements in the interview were admissible as present sense impressions.

We disagree that Holder's statements qualify as present sense impressions under Rule 803(1). Tex. R. Evid. 803(1). The Court of Criminal Appeals has explained that "[t]he rationale for the exception stems from the statement's contemporaneity, not its spontaneity." *Rabbani v. State*, 847 S.W.2d 555, 560 (Tex. Crim. App. 1992). When "the declarant has had time to reflect upon the event and the conditions he observed, this lack of contemporaneity diminishes the reliability

---

[7] A present sense impression is "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Tex. R. Evid. 803(1).

of the statements and renders them inadmissible" as present sense impressions. *Fischer v. State*, 252 S.W.3d 375, 381 (Tex. Crim. App. 2008).

Here, the evidence shows that Holder's custodial interview occurred more than four hours after Kiernan and Jones were injured. Before the interview began, Detective Mullis advised Holder that he had a right to consult a lawyer. Given that Holder's statements in the interview about the events that morning lacked spontaneity, his statements claiming that he acted in self-defense do not qualify as present sense impressions. *See* Tex. R. Evid. 803(1). We conclude the trial court did not abuse its discretion by rejecting Holder's argument that the recording was admissible on the basis that it consists of present sense impressions.

Third, Holder argues the trial court should have admitted the recording as an "excited utterance"[8] under Rule 803(2). Tex. R. Evid. 803(2). The Court of Criminal Appeals, however, has explained the justification for admitting excited utterances "is based on the assumption that the declarant is not, at the time of the statement, capable of the kind of reflection that would enable him to fabricate information." *Apolinar v. State*, 155 S.W.3d 184, 186-87 (Tex. Crim. App. 2005). In evaluating whether a defendant's statement qualifies as an excited utterance under Rule 803(2),

---

[8] Under Rule 803(2), an "excited utterance" is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Tex. R. Evid. 803(2).

courts consider "the length of time between the occurrence and the statement, the nature of the declarant, whether the statement is made in response to a question, and whether the statement is self-serving." *Id.* at 187. The critical determination in evaluating a claim that a statement is an excited utterance is whether the circumstances establish that the statement resulted from impulse or instead, is a statement the defendant made after he had a reasonable period to reflect on his actions. *See Zuliani v. State*, 97 S.W.3d 589, 596 (Tex. Crim. App. 2003).

Holder relies on Detective Mullis's testimony to support his claim that the trial court abused its discretion by rejecting his argument that the recording consists of excited utterances. During the trial, Detective Mullis testified that Holder appeared shocked when he learned that Kiernan died from the injuries he received earlier that day. The recording of Holder's interview shows that Holder learned about Kiernan's death near the end of his interview. Given that Holder's reaction to Kiernan's death occurred near the end of Holder's interview, even were we to assume that the statement Holder made at that point might possibly qualify as an excited utterance, Holder's statement at this point is but one statement in a long recording. Holder did not offer just this one statement; instead, he offered the whole recording, and it does not consist entirely of excited utterances. *See Schulz v. State*, 446 S.W.2d 872, 874 (Tex. Crim. App. 1969) (explaining that when the evidence that is offered is relevant or admissible only in part, the trial court need not separate

10

the admissible from the inadmissible and may instead reject the evidence when it has been offered as a whole). In Holder's case, the record shows that Holder offered the entire recording into evidence not just a portion of it.[9]

In a trial, a trial court is not required to review a lengthy recording to determine whether some part of it might be admissible under one or more of the exceptions to the hearsay rule. *Id*. We conclude the trial court did not abuse its discretion by excluding the entire recording when Holder failed to make a separate offer of just the statement he made upon learning of Kiernan's death. *See Jones v. State*, 843 S.W.2d 487, 492-93 (Tex. Crim. App. 1992), *abrogated on other grounds*, *Maxwell v. State*, 48 S.W.3d 196 (Tex. Crim. App. 2001); 43A G. Dix and J. Schmolesky, *Texas Practice Series, Criminal Practice and Procedure* § 53:130 (3d ed. 2011).

Fourth, Holder argues the trial court erred by refusing to admit the recording of his interview because it contains statements of his then-existing mental,

---

[9] During his trial, Holder's attorney argued that the recording of Holder's custodial interview was admissible because it was "[a] present sense impression. It is an excited utterance, and it is proof of our client's then existing state of mind or then condition." Holder's attorney never pointed to any specific statements in the recording to support these claims: instead, he directed his argument to the recording as a whole.

emotional, or physical condition. *See* Tex. R. Evid. 803(3).[10] But the statements Holder made in the interview, as to his claim of self-defense, address his state of mind that morning, not his "then-existing state of mind" at the police station. *See* Tex. R. Evid. 803(3). Holder offered the entire recording into evidence but he failed to point to any specific statements in his interview and tender them into evidence separately. The trial court was not required to wade through Holder's recorded interview to separate those parts of the recording that might have been admissible had they been offered separately. *See Jones*, 843 S.W.2d at 492-93.

Fifth, Holder argues that the trial court should have admitted the recording of his interview into evidence as a public record. *See generally* Tex. R. Evid. 803(8).[11] Holder, however, admits he did not raise this argument in the trial court and that he first raised it in the brief he filed in his appeal. Because Holder did not rely on this

---

[10] Rule 803(3) authorizes trial courts to admit "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed[.]"

[11] Rule 803(8) provides that a record or statement of a public office is not excluded by the rule prohibiting hearsay if the record "sets out: (i) the office's activities; (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation." Tex. R. Evid. 803(8).

argument at trial, we may not reach this part of his argument to resolve his appeal. *See* Tex. R. App. P. 33.1.

We conclude the trial court did not abuse its discretion by excluding the recording of Holder's custodial interview. For that reason, we overrule Holder's first issue.

Comment on Holder's Failure to Testify

In issue two, Holder argues the prosecutor engaged in improper closing argument by making the following argument:

> And when you talk [about] the testimony and the evidence in this case, you're not to consider things that didn't happen.
>
> Now, you heard the defense counsel attempt to admit the statement of the defendant to the investigator in this case. We talked about this in voir dire where I can't be made to play that statement for you. And if the defendant chooses to waive his Fifth Amendment right and testify, he would be subject to cross.

When Holder's lawyer objected to this part of the prosecutor's argument and approached the bench, the trial court asked Holder's lawyer for the basis of his objection. Holder's attorney responded: "Fifth Amendment. She just mentioned that he didn't testify in her argument. We could ask for a mistrial right now, your Honor." The trial court informed Holder's attorney it would instruct the jury to listen to the Court's charge and to the evidence the trial court admitted during the trial. When Holder's attorney asked for a mistrial, the trial court denied his request.

13

When the bench conference ended, the trial court instructed the jury, "Members of the jury, you always limit your consideration to the evidence that came in during the course of the trial and to the instructions that the Court has given you in the Court's Charge." Significantly, Holder's attorney failed to ask that the trial court give the jury further instructions based on his complaint that the prosecutor had commented about Holder's failure to testify. After the trial court instructed the jury to base its verdict on the evidence, the prosecutor told the jury:

> The judge is here to make sure we follow the rules and to make sure that admissible and relevant evidence is offered by each side of this case for your consideration.

> So if you don't like the fact that you didn't hear that statement, you hold that against me. If you don't like the fact that I chose, based on my strategy in this case, not to play that statement, then you go talk to my boss. But what you don't do is in any way compromise your verdict in this case and the verdict that that family is entitled to.

> You restrict your deliberations solely to the evidence that was presented to you in this case.

Holder lodged no objection to this part of the prosecutor's argument.

After Holder rested, the trial court instructed the jury about its duties. For example, the trial court instructed the jury that

> Our law provides that a Defendant may testify in his own behalf if he elects to do so. This, however, is a right accorded a Defendant, and in the event he elects not to testify, that fact cannot be taken as a circumstance against him.

14

In this case, the Defendant has elected not to testify and you are instructed that you cannot and must not refer to or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever as a circumstance against him.

Holder argues that he is entitled to a new trial because the prosecutor commented on his right not to testify. In evaluating whether a trial court abused its discretion by denying a defendant's request for a mistrial based on improper jury argument, appellate courts must balance several factors, including "(1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks), (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction)." *Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011). In Holder's trial, the trial court did not deny the objection Holder made to the prosecutor's comment regarding the fact that Holder had not testified. Instead, the trial court instructed the jury to consider only the evidence the trial court admitted into evidence during Holder's trial. The instruction suggests that the trial court believed the prosecutor's argument was improper but that the prejudicial effect of the argument could be cured. Additionally, in the charge, the trial court advised the jury that it was not to consider Holder's decision not to testify during his trial.

15

Generally, the law "presumes that instructions to disregard and other cautionary instructions will be duly obeyed by the jury." *Id.* at 741. Here, the prejudicial effect of the prosecutor's argument did no likely cause the jury to ignore the trial court's instructions. Moreover, the evidence showing that Holder committed the crimes of murder and aggravated assault with a deadly weapon was strong, as there were multiple witnesses who saw Holder back up and then changed directions before running over the men who were walking away from his truck. Finally, no evidence was admitted during the trial showing that Holder was acting in self-defense. The record includes the testimony of two forensic pathologists, both of whom thought that Kiernan's death was consistent with the injuries he suffered on the morning of March 28, 2015.

Having considered the entire record, we hold the trial court did not abuse its discretion by denying Holder's request for a mistrial. We overrule Holder's second issue.

Victim-Impact Evidence

In issue three, Holder suggests the trial court abused its discretion by allowing the prosecutor, during the punishment phase of his trial, to ask Kiernan's mother about her "feelings on what should happen in this case, what would feel like justice to you." Holder's attorney objected to the question, stating that "[t]his takes the form of a victim impact statement, which comes only after sentencing." Holder's attorney

16

also argued that allowing Kiernan's mother to answer would invade the province of the finder of fact and violate article 42.03 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 42.03, § 1(b) (West 2018).[12]

The trial court overruled Holder's objection. In doing so, the trial court stated that the court was "not listening to this woman's testimony as a way of formulating" Holder's sentence. When Kiernan's mother responded to the prosecutor's question, she stated that she wanted Holder to suffer "[u]ntil the day [Holder] dies. So -- or the only other thing I could say is life. My son doesn't have a life any longer. He can't impact this world in any way, good, bad; and that's what my family and I would like." Neither party asked Kiernan's mother any further questions after she made the above quoted response.

In assessing the possible impact of Kiernan's mother's opinion about her desire that Holder receive a life sentence, we note that Kiernan's mother was not the only witness who testified that Holder should receive a life sentence. After Kiernan's mother stepped down from the witness stand, Kiernan's younger sister testified,

---

[12] Article 42.03, § 1(b) provides that "[t]he court shall permit a . . . close relative of a deceased victim . . . to appear in person to present to the court and to the defendant a statement of the person's views about the offense, the defendant, and the effect of the offense on the victim. . . . The statement must be made: (1) after punishment has been assessed. . . ; (2) after the court has announced the terms and conditions of the sentence; and (3) after sentence is pronounced. Tex. Code Crim. Proc. Ann. art. 42.03, § 1(b) (West 2018).

17

without objection, that she believed "that [Holder] deserve[d] just a life in prison [when she thought] about what [Holder had] done to me and my family and my friends."

Generally, a trial court may allow victim-impact evidence "at the punishment stage of a criminal trial when that evidence has some bearing on the defendant's personal responsibility and moral culpability." *Salazar v. State*, 90 S.W.3d 330, 335-36 (Tex. Crim. App. 2002). Victim-impact evidence is "designed to remind the jury that murder has foreseeable consequences to the community and the victim's survivors—family members and friends who also suffer harm from murderous conduct." *Id.* In any event, "[t]he wishes of the victim's family members as to the defendant's fate fall beyond the parameters of victim-impact evidence and are not admissible." *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003).

We conclude the trial court erred by admitting the testimony that is the subject of Holder's third issue because it does not address how Kiernan's death affected Kiernan's mother's life. While recognizing that error occurred, the "erroneous admission of opinion testimony is non-constitutional error that must be disregarded unless it affected the appellant's substantial rights." *Bezerra v. State*, 485 S.W.3d 133, 144 (Tex. App.—Amarillo 2016, pet. ref'd); *see also* Tex. R. App. P. 44.2(b). In determining whether a trial court's error in admitting evidence justifies a new trial, we review the entire record in evaluating the nature and character of the error

18

and how the error might have influenced the fact finder's consideration of the other evidence in the case. *Bezerra*, 485 S.W.3d at 144. Evaluating whether the State emphasized the evidence admitted in error is a factor in deciding whether the trial court's error affected the defendant's substantial rights. *Id.*

In Holder's case, the trial court specifically advised the parties before Kiernan's mother answered the question that the trial court would not consider the witness's opinion about Holder's sentence. In closing argument, the record shows that the prosecutor never mentioned that Kiernan's mother's testimony to the effect that Holder should receive a life sentence. In our opinion, the record does not show that the testimony of Kiernan's mother influenced the trial court's decision-making process in assessing Holder's sentence. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2018).

The facts surrounding Kiernan's murder allowed the trial court to give Holder a life sentence. The evidence from the trial shows that Kiernan's murder was both senseless and brutal. Holder ran over Kiernan with a truck while Kiernan was walking away. Holder then got out of his truck and struck Kiernan, a stranger to him, twice in the head with a tire iron with sufficient force that the blow fractured Kiernan's skull. The punishment evidence shows that Holder has a prior history of criminal behavior for crimes that include theft, possession of controlled substances, and resisting arrest. During the punishment phase of Holder's trial, a witness testified

that about six days before March 28, 2015, she saw Holder beating a woman in the face with his fist while Holder and the woman were standing on the shoulder of a road.

Considering the record as a whole, we cannot conclude that the trial court's error—admitting Kiernan's mother's testimony that Holder should receive a life sentence—affected Holder's substantial rights. *See* Tex. R. App. P. 44.2(b). We overrule Holder's third issue.

Having overruled Holder's issues, we affirm the trial court's judgments in trial court cause number 15-03-03172-CR (Counts 1 and 2).

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on October 25, 2018
Opinion Delivered January 9, 2019
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.